FRANK FIALA ET AL. v. JOHN V. AINSWORTH, RECEIVER OF THE STATE BANK OF MILLIGAN, NEBRASKA.

FILED MARCH 18, 1903. No. 12,917.

1. **Bond:** NEGLIGENCE: LIABILITY OF SURETIES. Where an officer of a bank gives a bond conditioned that he will "honestly, faithfully, and efficiently" perform his duties, he and his sureties are liable for loss resulting from his negligence, even though the directors may not have used due diligence.

2. **Verdict.** Evidence examined, and *held* sufficient to support the verdict.

ERROR to the district court for Fillmore county: GEORGE W. STUBBS, DISTRICT JUDGE. *Affirmed.*

*Frank Dolezal* and *John Barsby,* for plaintiffs in error.

*Charles H. Sloan, F. W. Sloan, John D. Pope, Fayette I. Foss, Ben V. Kohout* and *R. D. Brown,* contra.

POUND, C.

A number of questions of law involved in this controversy were determined at a former hearing. *Fiala v. Ainsworth,* 63 Neb. 1. At that time, we held that the bond sued on, being conditioned that the principal would "honestly, faithfully and efficiently discharge the duties" of his office, covered not only his honesty as an officer but also his competency, skill and diligence. We held further that an assistant cashier, though bound in general to comply with the directions of the cashier, is not justified in aiding in or conniving at misappropriation of funds by his superior, and can not escape responsibility for so doing by showing that he acted under the latter's instructions. We recommended reversal of a judgment for the plaintiff, however, because matters had been submitted to the jury with respect to which, under the evidence, we considered that the principal was not responsible. Conceding that there was evidence tending to show

that the principal in the bond had knowingly aided the cashier in obtaining money from the bank by forged and fictitious paper, and in concealing the transactions from the directors, so long as the evidence on this point was conflicting, and all the items of damage alleged were left to the jury, so that it was impossible to say upon which item or items the verdict was based, or that the jury had in fact rested their conclusion upon the conflicting evidence as to the abstraction of money by forged paper, we were of opinion that the judgment could not stand. Upon a new trial, the plaintiff confined his case to the one question as to misappropriation by means of forged and fictitious notes, and the complicity of the principal in the bond therein; and for the third time a jury found in his favor.

It is asserted the former decision establishes that the sureties are not liable for any loss occurring after December 1, 1899, because on that date the directors became aware that the cashier had been speculating on the board of trade and had lost money. This goes much further than the opinion warrants. One of the items submitted to the jury at the trial then under review related to a sum of $3,000 consigned to the bank, which was taken by the cashier before it came into the bank and made away with. With respect to this item it was urged that if Fiala (the principal in the bond) had notified the directors of what he knew, they would have discharged the cashier before he could have abstracted this sum. On this point, OLDHAM, C., said (p. 9) : "It would be going far into the realms of speculation to determine just how much more notice of Zirhut's shortcomings than that which the president and board of directors of the bank must have had at their meeting on the 1st day of December, 1894, would have induced that board to discharge him, and we do not believe that any vague theorizing on this question should be indulged in at the expense of Fiala's bondsmen." But in so holding we did not say that the bond was not to be held for loss caused by negligence or dishonesty of the

principal after December 1, if the natural and direct re-
sult of such negligence or dishonesty. The abstraction
of the $3,000 could have been prevented only by dis-
charging Zirhut, the cashier; and it could not be said
that the failure to discharge Zirhut was due to negligence
on the part of Fiala. It is quite another matter, how-
ever, when proof is adduced to show that Zirhut misap-
propriated other sums after December 1, and that Fiala
assisted him in or connived at the transactions. In such
case, Fiala's negligence or dishonesty would be a proxi-
mate cause of the loss, since, had he refused to carry out
the instructions of his superior, and given prompt in-
formation of what was in progress, the money could not
have been taken out. Counsel contend that the "directors
of the bank owed it as a duty to Fiala's bondsmen to have
discharged Zirhut on December 1," and that "having
knowledge of Zirhut's dishonesty, the bank could not keep
him there to tempt the honesty of another employee."
But neither negligence on the part of the directors nor
dishonesty on the part of Zirhut affords an adequate ex-
cuse for negligence or dishonesty on the part of Fiala.
So far as loss ensued as a natural and direct result of his
acts, he is liable, notwithstanding some of his superiors
may have been careless, and some dishonest. Officers of
a bank who are concerned in a misappropriation of its
funds are liable, although they do not profit thereby; and
those who negligently fail to prevent it, when they have
knowledge of it, are within that category. *Williams v.
McKay*, 46 N. J. Eq. 25, 18 Atl. 824. That the directors
failed to use due diligence, and, in consequence, rendered
themselves liable, also, does not relieve Fiala. *Batchelor
v. Planters' Nat. Bank of Louisville*, 78 Ky. 435.

A further point is made, that the former decision con-
clusively establishes notice of Zirhut's peculations on De-
cember 1, 1894. As a general proposition, where the evi-
dence at a new trial may be presumed to be materially
different from that at a trial already reviewed, this court
will investigate the record on a subsequent review unin-

fluenced by the former decision, except so far as questions
of law were there adjudicated, which apply equally to the
evidence at each trial.    *State v. Paxton*, 65 Neb. 110.'
Hence, we should not be bound by a mere expression of
opinion at the former hearing with reference to the evi-
dence then before us.    In the present record there is a
conflict between the directors of the bank on the one
hand, and certain witnesses for the defendant upon the
other, as to what was known to the directors on Decem-
ber 1.    The latter assert that they knew only that Zirhut
had lost some $5,000 in board of trade speculations, but
did not know that it was the bank's money which had been
lost.    Indeed, they testify that they were assured it was
not the bank's money.    They claim that Zirhut was in-
debted to the bank at that time by reason of other trans-
actions, and contend that they took collateral security to
cover such indebtedness and prevent loss by reason of
Zirhut's inability to pay, owing to his losses by specula-
tion, and not for the purpose of indemnity against an
abstraction of the bank's moneys, of which they knew noth-
ing.    No such question was considered in the former opin-
ion, and we see nothing to indicate an intention to decide
the question of fact presented by this testimony.    This
was pre-eminently a question for the jury, and a finding
on their part that the directors had no such notice on
December 1 is amply supported by the evidence.    We think,
therefore, that the trial court did not err in refusing to
limit liability upon the bond to loss accruing before De-
cember 1.

The principal contention of counsel is that the verdict
is contrary to and not sustained by the evidence.    As the
question of fact whether the forged and fictitious paper
was made use of to abstract money from the bank, or was
merely placed in the bank and on its books for the pur-
pose of deceiving a bank examiner, who was expected to
examine its affairs in the near future, was submitted to
the jury at the request of the plaintiffs in error, since they
requested instructions leaving this matter to the jury, it

may be doubted whether they are now in a position to ask us to review the evidence. *Farmers' Bank of Nebraska City v. Garrow,* 63 Neb. 64. But we have examined the evidence, and are of opinion that the verdict must be sustained. The plaintiff introduced seven notes which are shown to have been forged and fictitious. These notes have numbers upon them, in the handwriting of Fiala, referring to the discount register, and almost all of these numbers are false; the corresponding entries upon the discount register showing entirely different notes. The fictitious note in almost every case is omitted from the register. He showed, also, a letter written and signed by Fiala, in which five of these notes were sent to a bank at St. Joseph, Missouri, on November 22, 1894, for the purpose of obtaining a loan of $3,000 at that bank. This was after the last of the four fraudulent drafts which Zirhut had drawn on the same bank, and there is nothing to show that it was done to cover up those drafts. The forged notes were not entered on the books of the bank until sometime later; but this circumstance does not establish that they had not been used to abstract funds prior to that time, since, as to several of the notes, as we have already seen, there is evidence of their existence in the bank several weeks previously. As to some of the notes, it appears affirmatively that the proceeds were deposited to Zirhut's personal account, and the deposit slips and entries are in Fiala's handwriting. The plaintiff proved, also, the condition of Zirhut's account with the bank between December 6 and 13, the dates at which these notes were entered on the books, and this account showed the deposit of the proceeds of several of the notes, also sums marked as loans, aggregating a considerable amount; and the entries were in the handwriting of Fiala. Moreover, there was an entry of drafts charged to Zirhut corresponding to a check on Zirhut's account drawn by Fiala at the latter's direction. A number of witnesses testify that, when the bank closed, Fiala indicated voluntarily the forged and fictitious notes, and admitted that

he had known their character ever since they had been put in the bank. One witness, moreover, testifies that he charged him with knowing that the notes were forged at the time he enclosed them in the letter to the bank at St. Joseph, and that Fiala made no reply. Two of these witnesses are entirely disinterested, and their testimony is very convincing. Taking all of this evidence together, it certainly makes a strong case that Fiala knew of, if he did not actually assist in and connive at, Zirhut's fraudulent manipulations. The sole question, therefore, is whether any money was abstracted by means of these notes. Sometime before Zirhut absconded, Fiala drew up, at his dictation, a statement of his indebtedness to the bank. This statement, which foots up in all $13,915.65, sets forth the seven forged notes, and five other items amounting to $7,000. These last items do not correspond to the drafts by which money had been abstracted, as set forth in the former opinion, and evidently refer to notes, though their exact nature does not appear in the evidence. It does appear, however, that Zirhut was indebted to the bank by reason of other transactions. In view of sections 26 and 27, chapter 8, Compiled Statutes (Annotated Statutes, 3726, 3727), we should not be justified in presuming that this indebtedness, if legitimate, was by any means large enough to reach the sum indicated on the memorandum; moreover, if the seven notes had been put in the bank merely to deceive the examiner, it is difficult to see why Zirhut should have listed them as he did. Upon the whole, in the absence of any attempt on the part of the defendants to meet what is certainly a *prima-facie* case by showing the exact nature of Zirhut's other indebtedness, and its amount, and by showing the state of his account in the bank in detail, we think the jury were justified in concluding that he had abstracted much more than the money withdrawn by the drafts and that it had been done by means of these notes.

Error is assigned in that the trial court refused an instruction to the effect that if the notes were put into the

Fiala v. Ainsworth.

bank to cover up prior defalcations, the plaintiff could not recover. But the court stated clearly and repeatedly that the plaintiff could not recover unless the notes were made use of to abstract or misappropriate money, and, having so stated, we do not perceive that it was under any duty of repeating the proposition in a different form. Moreover, the instruction tendered is erroneous, in that it requires the jury to find that "money was actually paid or got from said State Bank of Milligan by such forged or spurious notes." If by reason of such notes Zirhut was enabled to use the bank's credit at St. Joseph, and make away with funds for which the bank at Milligan would ultimately be liable, the plaintiff would be entitled to recover.

Complaint is made, also, that the court refused to receive evidence tending to show that Zirhut had wrecked a former bank at the same place by speculation on the board of trade, and that the directors knew of this fact. As we have seen already, the negligence or dishonesty of others affords no excuse for negligence or dishonesty on the part of the principal defendant. We have little doubt that he suffered himself to be used by his superior, and that he did not appreciate the responsibility attaching to his position; but an assistant cashier of a bank, who gives a bond for faithful performance of his duties, is in no position to act as a mere puppet. His sureties have promised that he will discharge the duties of his office with reasonable skill and diligence, and that he is competent to perform them, and though the greater portion of the blame may attach to the cashier, it is his fault and that of his friends who became his sureties, if he undertook a position he was-incompetent to fill.

We therefore recommend that the judgment be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.