[Civil No. 2092.  Filed April 10, 1924.]

[224 Pac. 810.]

## NETTIE B. LASSETTER and NATIONAL SURETY COMPANY, a Corporation, Appellants, v. JULIUS W. BECKER, Appellee.

1. PRINCIPAL AND SURETY — LAW RECOGNIZES DIFFERENCE BETWEEN LIABILITY OF GRATUITOUS AND COMPENSATED.—The law recognizes the difference between the liability of a gratuitous and compensated surety, and the rule of *strictissimi juris* is applicable to the former rather than to the latter.

2. PRINCIPAL AND SURETY—NEGLIGENCE OR CARELESSNESS OF OBLIGEE IN HIRING PRINCIPAL OR INCOMPETENCY OF PRINCIPAL NO DEFENSE TO ACTION ON BOND.—Negligence or carelessness of a postmaster, obligee in a bond given by an assistant postmaster, or the incompetency of the principal in the bond, *held* not a defense to an action on the bond for loss occasioned by the principal's failure to account for funds coming into her hands.

3. PRINCIPAL AND SURETY—COMPLAINT IN ACTION AGAINST ASSISTANT POSTMASTER AND SURETY HELD TO SUFFICIENTLY ALLEGE BREACH OF BOND.—A complaint in an action by a postmaster against an assistant and the surety on the assistant's bond, alleging plaintiff had turned over to his assistant all stamps, moneys, mail matters, that she had neglected to accurately and faithfully account for same, and stating the amount of the shortage, *held* a sufficient allegation of a breach of the bond without an allegation of the individual defendant's negligence or carelessness.

4. TRIAL—GIVING AND REFUSAL OF INSTRUCTIONS AFFECTING DEFENDANT SURETY COMPANY'S LIABILITY HELD NOT ERROR.—In an action by postmaster against his assistant and the surety on her bond, the giving of an instruction ignoring the defense of negligence on the part of plaintiff and treating defendant surety company's liability as in the nature of that of an insurer, and the refusal to give a converse instruction for defendant, *held* not error.

5. APPEAL AND ERROR—ADMISSION OF LETTERS TENDING TO ESTABLISH CARELESSNESS OF DEFENDANT, AN ASSISTANT POSTMASTER, IN

---

1.  Liability of surety company as distinguished from that of gratuitous surety, see note in 12 A. L. R. 382.  See, also, 21 R. C. L. 1160.

2.  See 21 R. C. L. 993.

4.  See 2 R. C. L. 261.

5.  See 2 R. C. L. 247.

HANDLING SUPPLIES HELD NOT PREJUDICIAL.—In an action against an assistant postmaster and surety on her bond to recover a shortage, the admission in evidence of four letters from different postmasters claiming a shortage in supplies sent to them on requisition by defendant, on the issue of defendant's carelessness and negligence in handling such supplies, *held* not prejudicial, where a similar letter had been previously admitted without objection, and where defendant admitted that in each case she had made good the claimed shortage by forwarding the articles stated to be short.

6. APPEAL AND ERROR—ERRONEOUS ADMISSION OF EVIDENCE INDICATING SHORTAGE IN DEFENDANT'S ACCOUNTS HELD NOT PREJUDICIAL. In an action against an assistant postmaster and a surety on her bond to recover an alleged shortage, the admission in evidence of letters from the Postoffice Department at Washington, showing a shortage in the account of defendant's office, though error, *held* harmless, in view of other competent evidence establishing the fact of such shortage

APPEAL from a judgment of the Superior Court of the County of Apache.   Andrew S. Gibbons, Judge. Affirmed.

Mr. Richard E. Sloan, Mr. C. R. Holton and Mr. Greig Scott, for Appellants.

Messrs. Norris & Norris, for Appellee.

ROSS, J.—This suit was brought by appellee, Becker (hereinafter referred to as plaintiff), against Nettie B. Lassetter and National Surety Company, appellants (hereinafter referred to as defendants), to recover an alleged shortage in defendant Lassetter's accounts while acting as plaintiff's assistant postmaster at Springerville, Apache county, Arizona; the defendant National Surety Company being sued as surety.   The bond was for $3,000, joint and several, signed by Lassetter as principal and the surety company as surety, and ran to J. W. Becker, postmaster. It recited defendant Lassetter's appointment and

See 4 **C. J.** 975, 976; 32 **Cyc.** 73, 128, 150 (1925 Anno.), 307; 38 **Cyc.** 1636.

qualification as assistant postmaster at Springerville, and was conditioned as follows:

"Now the condition of this obligation is that, if the said Nettie B. Lasseter (name of employee in the same form as before), shall, on and after February 9, 1918, faithfully discharge all the duties and trusts imposed on her as such assistant postmaster either by law or by the rules or regulations of the Post Office Department of the United States, and which shall be so imposed on her in any position or positions in the said post office to which she shall be appointed, and for which she shall duly qualify and shall faithfully account for, deliver, and pay over to the proper official or person all moneys, mail matter, and other property of every kind which shall come into her hands as such assistant postmaster, and which shall come into her hands by virtue of her occupancy of any position or positions in the said post office to which she shall be appointed and for which she shall duly qualify as aforesaid; and shall also perform all duties and obligations imposed upon or required of her by law, or by regulation made pursuant to law, in connection with the Postal Savings Depository System, then this obligation shall be void; otherwise, of force."

This surety bond was copied into and as a part of the complaint, and its breach was alleged in the following language:

"That defendant Nettie B. Lassetter became in other respects duly qualified, and entered upon her duties as, and assumed the obligations of, assistant postmaster, and as such was placed in charge of all the stamps, moneys, mail matters, and other post office supplies of said post office, and plaintiff instructed, cautioned, and imposed the duty upon said defendant to keep strict account and pay over and deliver when called upon by the proper officials all stamps, moneys, mail matters, and other post office supplies which should come into her hands, by virtue of her occupancy of said position of assistant postmaster; that notwithstanding the said instructions and cautions, and in disregard of the duty imposed upon her, said defendant in default of the said bond

was careless and negligent, and violated the duties and obligations imposed upon her by virtue of her appointment and qualification as assistant postmaster, as aforesaid, and failed and neglected to keep accurate and faithful account of the stamps, moneys, mail matters, and other post office supplies, and thereby caused and created a shortage in her account with said post office in the sum of $2,164.61; that said shortage was revealed by a careful and efficient audit of said post office account by the Post Office Department of the United States government; that in further violation of her bond said defendant failed, neglected, and refused to pay over and deliver said sum when called upon by the plaintiff as postmaster, and plaintiff was thereby forced and compelled to suffer the loss of said shortage and to pay the Post Office Department of the United States government the sum of $2,164.61.''

The defendants acting together attacked the complaint by a motion to strike, a motion to make more definite and certain, and a general demurrer. They answered, admitting the execution of bond; specifically denied any shortage in Lassetter's accounts. They specially answered, setting up defendant Lassetter's minority, her inexperience in business, in keeping accounts, and in bookkeeping or training in the work about the postoffice, of all of which plaintiff was by defendant Lassetter informed; that the postoffice at Springerville was a distributing office, sending out supplies, such as stamps, envelopes, thrift stamps, and war savings stamps, to a large number of other offices, and that the work was complicated and needed a competent accountant and a properly initiated system of accounting; that defendant realized her incompetency to do the work, and asked to be permitted to resign, which was refused to her by plaintiff, who stated ''that he was aware that she was not experienced in such work, but that he was willing for her to go ahead and perform her work to the best of her ability.''

It is further alleged that when she entered upon her duties she was furnished with no invoice of the amount of moneys, stamps, mail matter, or other post-office supplies, and that the system of accounting and bookkeeping in use in office was inadequate, and plaintiff failed and refused to install a proper and adequate system; that there was no safe place provided for the keeping of postal supplies and moneys; that the postoffice was carelessly and negligently kept in the same room with the Becker Mercantile Company, a large general merchandise concern; and that all the employees of said mercantile company had access to the postoffice supplies; that if any shortage occurred while defendant Lassetter was employed as assistant postmaster it was not due to her negligence, but was due to the careless and negligent manner in which plaintiff conducted the affairs of said postoffice.

The motions and demurrer were overruled, and upon a trial before a jury the plaintiff was awarded the full amount sued for against both defendants, and they both appeal, assigning many errors.

The attitude of the defendants as manifested by their answer is that carelessness or negligence in employing the principal in the bond, or in superintending her work, or in failing to install a proper and adequate system of bookkeeping and accounting for her guidance, or in keeping the postoffice in the Becker Mercantile Company's storeroom, is a defense to any suit on bond, available alike to both the principal and the surety. It is therefore best that we look into the nature of the obligations of persons who sign fidelity bonds, such as the one here, before taking up and considering assignments.

The law has come to recognize a difference in the liability of one who signs a surety bond for compensation and one who signs it gratuitously. As to the latter the rule of *strictissimi juris* prevails. The former's obligation is regarded more like that of an

insurer. 21 R. C. L. 1160, section 200, and cases cited; *Galveston C. Const. Co.* v. *Galveston, H. & S. A. Ry. Co.* (D. C.), 284 Fed. 137; *Royal Indemnity Co. of New York* v. *Northern Granite & Stone Co.*, 100 Ohio St. 373, 12 A. L. R. 378, 126 N. E. 405, and annotated note at page 382. The annotator in the last case makes the statement that the contract of a company organized for the express purpose of acting as a surety for compensation "will be construed most strongly against the surety, and in favor of the indemnity which the obligee has reasonable grounds to expect. The courts, further, in following this rule, regard the contract more in the nature of an insurance contract, and by analogy apply the rules governing liability applicable in the latter class of contracts." The cases supporting this statement of the law are there collated.

The reason for this distinction is that formerly a surety became such for accommodation only. He did not write or prepare the bond he signed, and was not compensated for signing it. He usually loaned his name and credit, reluctantly hoping that nothing would come of it. He had no motive other than the altruistic one of assisting either the principal in the bond or the obligee. This gap has been filled by the organization of surety companies for the very purpose of furnishing bonds of indemnity against loss by reason of risks incident to certain employments and undertakings upon the payment of compensation therefor, such companies to prepare and write the bonds they sign, and state therein the limits and conditions of their liabilities. Their business is not only extensive but in its very nature partakes of the character of the business of insurance. They in effect say to the employer that they will guarantee that a given employee is honest and competent to do the work desired, and if not they will make good any loss he may sustain by reason of such employment.

The employer in the face of such a covenant may well assume the bonding company has made all necessary investigation to inform itself and is willing for the compensation demanded to assume the risk guaranteed. If at the time of her appointment as assistant postmaster the defendant Lassetter was a minor, or unskilled in the work and inexperienced in business, or incompetent as a bookkeeper and accountant, these were facts of which the bonding company must be assumed to have had full knowledge when it signed the bond. Fidelity bonds executed for compensation are treated as contracts of insurance. A surety company's "business is essentially an insurance against risk, and is commonly called, and properly so, 'fidelity insurance.' The obligation sued upon may more properly be termed a contract of insurance, rather than a bond. . . . " *Ladies of Modern Maccabees* v. *Illinois Surety Co.,* 196 Mich. 27, 163 N. W. 7; *Thomas Co.* v. *National Surety Co.,* 142 Minn. 460, 172 N. W. 697; *Bank of Tarboro* v. *Fidelity etc. Co.,* 128 N. C. 366, 83 Am. St. Rep. 682, 38 S. E. 908; *Remington* v. *Fidelity etc. Co.,* 27 Wash. 429, 67 Pac. 989; *Tebbetts* v. *Mercantile etc. Guarantee Co.,* 73 Fed. 95, 19 C. C. A. 281.

The nature of the defendant surety company's liability being that of insurer the negligence or carelessness of the obligee in the bond, or the incompetency of the principal, would not be a defense. As was said in *Guarantee Co. of North America* v. *Mechanics' Sav. Bank & Trust Co.,* 80 Fed. 766, 26 C. C. A. 146, where a like defense was interposed:

"It [the surety company] has not limited its risk to one arising only when the bank officials act without negligence. If it wishes to do that, it should use apt words in its policy, and say so in plain and unambiguous terms, and then its customers would know that they were paying for insurances against losses that could not occur, for 'due and customary' diligence, in the sense of the argument we are consider-

ing, means that kind which always brings discovery the moment the stealing begins.''

See, also, *Fiala et al.* v. *Ainsworth,* 68 Neb. 308, 94 N. W. 153.

This brings us to the assignments based upon the court's order refusing to strike certain parts of the complaint, and its order refusing to direct the plaintiff to make his complaint more definite and certain, and its order overruling the general demurrer.

It is apparent that the pleader has inserted in his complaint more than was necessary, and that some of his allegations are more in the nature of evidence than ultimate facts. The reference therein to defendant Lassetter's careless and negligent default, if it had been material, is more of a conclusion than a statement of facts. However, the material allegation that there was turned over to the defendant Lassetter as assistant postmaster all the stamps, moneys, and mail matters belonging to or coming into the possession of said postoffice, and that she failed and neglected to keep accurate and faithful account thereof, and failed and neglected and refused to pay over and deliver when called upon a shortage of $2,164.61, is a sufficient allegation of the breach of the bond set out in the complaint. It was not necessary to allege any carelessness upon the assistant postmaster's part, nor was it necessary to allege that the deficit had been occasioned by a failure to keep faithful and accurate accounts of the supplies of the office. The fact of Lassetter's receiving from the plaintiff, or through the Post Office Department, effects and supplies with which the plaintiff was charged, and a failure to account for the same, constitutes a violation of the terms of the surety bond, as also her obligation as assistant postmaster, and we think that the complaint in effect sets forth those facts with sufficient clearness as that no injury or surprise could result to the defendants.

An assignment based upon a given instruction, ignoring the defense of negligence on the part of the plaintiff, and treating defendant surety company's liability as in the nature of an insurer, for the reasons already given, is without merit, as is also an assignment based upon the court's refusal to give defendant's requested instruction submitting the converse of the proposition. This last instruction was properly refused for the further reason that no evidence was submitted showing the shortage was occasioned by reason of the place where the postoffice was kept or by reason of the fact that others had access to it. The defendant Lassetter stated that she at no time missed any money or supplies of the office; that she banked the money regularly; and that the stock of supplies and her listings thereof tallied, except for slight errors, and that these were corrected from time to time when called to her attention.

It is next contended the court erred in admitting in evidence certain letters received by defendant Lassetter from postmasters of Apache county concerning shortages of supplies sent them upon requisition. The first one of the kind offered was while Lassetter was on the witness-stand for cross-examination by plaintiff, and was from the postmaster of Alpine. It was in words as follows: "On counting the supply of stamps just received I find a shortage of 100 10 cent stamps." There was no objection made to the introduction of this letter, and the assignment based thereon cannot be considered. There were four other letters of the same purport, but from different postmasters in Apache county. An objection was taken as to these. In each case the defendant Lassetter admitted that she had made good the claimed shortage by sending to the writer the articles stated in letter to be short. The purpose of this cross-examination was to show that the deficit in Lassetter's account was possibly due largely to her carelessness and negligence

in handling of supplies. Since the witness admitted what the letters tended to prove, we do not see that their admission was important one way or the other. They certainly could not have been harmful.

The defendants also complain because there were admitted over their objections certain letters from the Treasury Department, claiming certain balances due, and also letters from the auditor of the Post Office Department, at Washington, D. C., showing a shortage in the account of the Springerville postoffice; and also certain canceled checks of plaintiff's payable to the postmasters at Albuquerque and Phoenix. The objection is that these did not constitute competent evidence tending to prove or disprove any issue involved.

It will be granted that these letters and checks were not competent evidence, and that their admission under the circumstances was error. Still it cannot have prejudiced the defendants, for the reason that there was competent evidence introduced showing that during defendant Lassetter's incumbency as assistant postmaster a deficit occurred amounting to the sum of $2,768.16. The books, records and accounts kept by defendant Lassetter while occupying such position were examined by an expert accountant, and according to his testimony they showed such a deficit. Besides, there is no one disputing this fact. It seems to be conceded, the plaintiff being a little more sensible of it than anyone else, because, as his canceled checks will show, his bank account is short that amount.

The issue as to whether the defendant Lassetter had faithfully accounted for, delivered, and paid over to the proper officer or person all moneys, mail matter, and other property that came into her hands as such assistant postmaster was submitted to the jury, under proper instructions, and by the jury determined against the contention of the defendants.

In other words, the verdict was in effect a finding that the defendant Lassetter was responsible for the deficit.

In fairness to Miss Lassetter it should be said that the record tends to show that the shortage is due more to her inexperience and carelessness than to any dishonesty. The plaintiff disclaims any intention of charging her with willful and corrupt misconduct, and the record is free from any such showing. One thing seems to be certain, and that is that there was a shortage.

The effort upon the part of defendants was to try to convince the jury that this shortage was occasioned partly, if not wholly, by the plaintiff himself. However, there was no evidence to sustain such contention. The record shows that the plaintiff was the general manager of the Becker Mercantile Company and cashier of the local bank. That he was a very busy man goes without saying, and that he depended entirely upon defendant Lassetter to keep things straight in the postoffice and to relieve him from that work is quite evident.

The evidence upholds the theory of the plaintiff, and amply supports the verdict of the jury. No prejudicial error appearing in the record, the judgment of the lower court is affirmed.

McALISTER, C. J., and LYMAN, J., concur.