[Civil No. 2985. Filed April 1, 1931.]

[297 Pac. 864.]

FIRST NATIONAL BANK OF ALBUQUERQUE, a Corporation, Appellant, v. THE STANDARD ACCIDENT INSURANCE COMPANY, a Corporation, Appellee.

Messrs. Favour & Baker, for Appellant.

Messrs. Sloan, Holton, McKesson & Scott, for Appellee.

McALISTER, C. J.—This action was brought by the First National Bank of Albuquerque, New Mexico, against Charles Woods, individually and as executor of the estate of Joseph F. Woods, and the Standard Accident Insurance Company, to recover on a bond given to secure the payment of the taxes on a house and lot in Holbrook, Arizona, and the interest on a judgment foreclosing a mortgage lien thereon. The Standard Accident Insurance Company was surety on the bond and from a judgment in its favor the bank has appealed.

Prior to the death of Joseph F. Woods in November, 1923, the bank became the owner of two notes and a mortgage executed by him in December, 1919, on a house and lot in Holbrook, Arizona. Within the proper time following his death its claim against the estate was filed and approved. The bank did not secure payment, however, the executor being unable to sell the property for ninety per cent of its appraised value, so in November, 1925, it brought suit

against the latter in the federal court at Prescott, Arizona, praying for a foreclosure of the mortgage and, due to the fact that the taxes were not being paid in accordance with the provisions of the mortgage, for the appointment of a receiver.

The court heard the case on February 9th, 1926, and on the same day rendered a decree foreclosing the mortgage and directing that the property be sold, the proceeds disposed of as provided therein and that no deficiency judgment be entered. The executor appealed and, since this would have the effect of delaying final settlement and the rents were not being applied to the taxes and interest, the bank renewed in August thereafter its application for the appointment of a receiver. The attorney for the executor, however, resisted, and to avoid a receivership proposed the giving of a bond to insure the payment of the taxes and the interest on the judgment. This was accepted and a bond in the sum of $1,000 was executed August 21st, 1926, by Chauncey Woods, individually and as executor, as principal, and by the Standard Accident Insurance Company, as surety, and delivered to the bank. Its condition was that the obligation it acknowledged would no longer exist if the executor should pay or cause to be paid the taxes, interest and penalties due or to become due pending the final determination of the litigation. The appeal resulted in an order remanding with instruction to the district court to dismiss unless the complaint was amended to show diversity of citizenship. This was done, however, another trial had, and a decree substantially the same as the one dated February 9th, 1926, was rendered in December, 1927. A sale at public auction in accordance with the instructions in this decree was made by the United States marshal in April, 1928, and the property bid in by the bank for the amount of its judgment, $4,788.81.

In the meantime the taxes and penalties for 1923, 1924, 1925, 1926 and 1927 had not been taken care of and these, together with those for 1928, totaling for the six years $1,225.59, were paid by the bank in November of that year. In January prior thereto, however, the bank had instituted this action against Woods, individually and as executor, and the insurance company, both having failed to pay the taxes as provided in the bond, but the former did not appear in the suit in either capacity, and on March 29, 1929, more than a year after it was instituted, the plaintiff dismissed without prejudice as to him and thereafter proceeded against the insurance company alone.

The action resulted in the defendant's favor and it is from this judgment and a denial of its motion for a new trial that the plaintiff appeals.

A number of errors are assigned but they are discussed under four propositions of law, the first one being that the dismissal as to the principal on the bond, Chauncey Woods, individually and as executor, did not release the surety thereon, the insurance company. The latter, however, appellee herein, contends that it did have this result and necessarily that there was no error in the court's ruling to that effect. Undoubtedly the general rule is that an unqualified discharge of the principal debtor discharges the surety also. 21 R. C. L. 1065; *United States Fidelity & Guaranty Co.* v. *Alfalfa Seed & Lumber Co., ante,* p. 48, 297 Pac. 862. However, under the statutes of this state there are certain circumstances under which it is not required that the principal obligor be made a party. Paragraph 3732, Revised Code of 1928, which enumerates these, reads as follows:

"3732. Actions against surety, assignor or indorser. The assignor, indorser, guarantor and surety upon a contract, and the drawer of a bill, which

has been accepted, may be sued without the maker, acceptor or other principal obligor, when the latter reside beyond the limits of the state, or in such part of the same that they cannot be reached by the ordinary process of law, or when their residence is unknown and cannot be ascertained by the use of reasonable diligence, or be dead, or insolvent."

Appellant bases its contention that the dismissal as to Woods did not defeat its right to proceed against appellee alone upon the proposition that Woods at the time was a resident of California, a fact that brought the case within the provision permitting the surety to be sued without the principal obligor, when the latter resides "beyond the limits of the state." Appellee admits this would be correct if it appeared in the record that Woods resided in California but contends that nowhere therein is the court advised of this fact. It points out that the minutes of·the court do not show upon what grounds the motion to dismiss was made or granted, that the complaint contains no allegation as to the residence or nonresidence of Woods and that the evidence is silent concerning it. Whether this be true or not is immaterial, for appellee made no effort in the trial court to take advantage of the dismissal by moving then or later that the action be dismissed as to it upon the ground that the discharge of the principal obligor discharged the surety, and since jurisdiction of the surety was not lost by the mere dismissal as to the principal the objection that the record fails to show that Woods did not reside in Arizona cannot be raised for the first time in this court.

"If the defect of parties plaintiff is shown upon the face of the pleading," to use the language of *Cooper* v. *Holder*, 24 Ariz. 415, 210 Pac. 690, "it may be reached by demurrer; if not thus shown, by answer. If the objection is not raised in one of these ways, it shall be deemed waived."

Appellant contends, however, that even though this were not true, the facts regarding his residence were such as to authorize suit against the surety alone anyway, and we think the record sustains this contention. Among the exhibits are the second amended complaint in the mortgage foreclosure suit filed in July, 1927, and the decree rendered in December thereafter. In the former, it is alleged, that Chauncey Woods, "Executor of the estate of Joseph F. Woods, deceased, at all of the times hereinafter mentioned was and is both, individually and as Executor, a resident and citizen of the state of California," and in the latter the court found this, together with the other allegations therein, to be true. And "when the existence of a residence at a certain place at a certain time has been established," says 10 R. C. L. 872, "it will be presumed to have continued, until the contrary is shown." 22 C. J. 89, and note 15. There is nothing in the record showing that Chauncey Woods became a resident of Arizona after December, 1927.

The fact that a surety compelled to pay a judgment or any part of it, has, under paragraph 3052, Revised Code of 1928, the right of subrogation and that this will be denied him if no judgment against the principal obligor is rendered does not defeat the right of the obligee to enforce his contract against the surety where the principal obligor has died, placed himself beyond the reach of the processes of the court or become insolvent. The surety has agreed to pay the obligation if the principal does not and clearly it was not the purpose of the legislature to relieve him from doing so merely because the obligee does not do an impossible thing, that is, proceed against a principal that cannot be served in this jurisdiction, or a useless one in case he could be, that is, procure a wholly worthless judgment against him. In addition to this, the surety's right to recover from

such a principal in a separate action wherever he may be found the amount paid on the obligation is not destroyed by the obligee's failure to proceed against him.

The property was bid in by appellant for $4,788.81, the amount due on the note, exclusive of the taxes for the years 1923 to 1928 totaling $1,225.59, but it was afterwards compelled to pay these also, the county of Navajo having filed suit to collect those covering a part of this period, and appellee takes the position that the value of the property was sufficient to satisfy this total sum, $6,014.40, and, therefore, that appellant cannot collect the taxes again, even though the bondsmen had guaranteed their payment. To show that the property did not then have this value appellant put upon the witness-stand the delinquent tax attorney for Navajo county, who, after qualifying, testified that it was worth about $2,500, and to prove that it was of greater value than this appellee upon cross-examination of this witness introduced two inventories and appraisements of the estate made in 1924. In one of these the value had been placed by the appraisers at $6,500 and in the other at $6,000, and appellant objected to their being received advancing several reasons therefor, but the court overruled the objection, and this ruling forms the basis of the next error assigned. Inasmuch, however, as it appears from the statement of the court that little weight could be given to the contention that the property had a value of $6,000 when sold under execution, since the equity of redemption was not exercised, and consequently that this did not enter into the decision of the court, appellant was not injured by it and a consideration of the ruling is unnecessary.

In both decrees of foreclosure there is the specific direction that no deficiency judgment against Woods as executor be entered and the trial court held that

this, in effect, constituted a waiver by appellant of its right of action against the executor for the unpaid taxes and, therefore, that it prejudiced the rights of appellee. Appellant takes the position, however, that inasmuch as the decree was an order of the court it was not the voluntary act of appellant, the plaintiff in the foreclosure suit, and, therefore, should not be treated as a waiver by it of a deficiency judgment. Whether this portion of the decree be considered as a court order made against the will of appellant or as its voluntary act is immaterial because under section 3990, Revised Code of 1928, it was necessary, before it could bring action to foreclose its mortgage, that its right to proceed against any other property of the estate be waived, and the propriety of this result's being attained by decree of the court rather than by an allegation in the complaint cannot be questioned after the decree is entered.

In addition to this the bond was given six months after the decree directing that no deficiency judgment be entered was rendered and appellee had full notice of its terms when it became surety thereon. Clearly this estopped it from benefiting therefrom, and even though the statute had not required it but appellant notwithstanding had waived recourse against other property of the estate and appellee knowing this had executed the bond anyway, the same result would have followed. Having, therefore, guaranteed the holder of the mortgage that if the executor did not it "would pay or cause to be paid all taxes and back taxes due or to become due . . . to the final determination of the litigation" and by so doing, having prevented the appointment of a receiver to take charge of the mortgaged property and apply the rents and profits therefrom to the payment of the taxes, appellee could not, after the executor had failed and appellant been compelled to pay them, be

heard to say that it was released from doing so to the extent of its bond merely because appellant did' what appellee knew when it signed the undertaking appellant was required, and had theretofore agreed, to do, waive recourse against other property of the estate.

Appellant, as stated above, bid in the property for the full amount of its judgment and costs and some months later paid the taxes, the marshal having failed to collect in cash a portion of the purchase price for this purpose, and appellee contends that these acts constituted a waiver of "any rights it might have against the executor to pay the taxes as he was directed by statute, or to pay the amount of the bond in question." Instead of complying with the terms of paragraph 4906, Revised Statutes of 1913, providing that the person making a judicial sale of property on which there are unpaid taxes "shall pay such taxes, penalties, and costs out of the proceeds of such sale," the marshal followed the decree which directed him to apply the proceeds, first, in payment of the costs of foreclosure and sale, and, second, in satisfaction of the judgment. The remainder, if any, was to be turned over to the executor. But just how the fact that appellant later paid the taxes instead of the marshal's doing so then could release the executor from his obligation in respect thereto does not appear. While it is true, as appellee points out, that when appellant bid in the property in satisfaction of its judgment its mortgage lien was thereby discharged and necessarily that any lien in favor of the mortgagee for taxes paid to protect its mortgage was likewise discharged, because a lien of this character cannot exist independently of the mortgage, *Vincent* v. *Moore,* 51 Mich. 618, 17 N. W. 81; *Hitchcock* v. *Merrick,* 18 Wis. 375, yet this did not in any sense affect the county's lien for the taxes, which were still unpaid but which

the executor, and the surety if he did not, had agreed to pay. Appellant asked for the appointment of a receiver to see that the rents were applied to the payment of these taxes because it undoubtedly felt that the mortgaged property was not sufficient security for any sum in excess of its judgment, if even for that, and it was of no concern to appellee whether appellant did or did not pay them since its agreement to take care of them was conditioned upon the executor's and not appellant's failure to do so. In no sense, therefore, did appellant waive its right to insist that the executor, or in his absence his surety, be required to live up to his undertaking.

The motion to affirm with which appellee opens its brief is based upon the state of the record presented to this court and while it is not complete in all respects it is sufficiently so to present the issues involved.

The judgment is reversed and cause remanded with instruction to the lower court to enter judgment for appellant.

ROSS and LOCKWOOD, JJ., concur.