[Civil No. 3152. Filed March 30, 1932.]

[9 Pac. (2d) 408.]

MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Corporation, Appellant, v. WILLIAM G. LENTZ, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Cunningham, Carson & Gibbons, for Appellee.

LOCKWOOD, J.—William G. Lentz, hereinafter called appellee, filed suit against Alton B. Carter, hereinafter called the contractor, and Massachusetts Bonding and Insurance Company, a corporation, hereinafter called appellant, to recover upon a bond given by the latter to secure the performance of a contract entered into between the contractor and appellee.

Appellant was duly served, and answered, but the contractor, although made a party to the suit, was never served and never appeared therein, the sheriff's return on the summons showing that he was unable to find the contractor "in Maricopa County." The case was tried before a jury, and in the opening statement on behalf of appellee his counsel stated that judgment was sought only against appellant. Counsel for appellant thereupon called the attention of the court and opposing counsel to the fact that the contractor was present in court at the time under a *subpoena duces tecum,* but not as a defendant, but made no suggestion that he be served. Judgment was rendered on a verdict in favor of appellee in the sum of $12,000, and after the usual motion for a new trial had been overruled appellant brought the case before us for review.

There are some sixteen assignments of error, which we will consider as seems advisable, but upon the legal propositions presented thereby rather than on the formal assignments. The facts of the case, as shown by the evidence presented on the trial, are as follows:

In May, 1929, appellee and the contractor entered into a written agreement by the terms of which the

latter was to construct a building on certain land of appellee for the sum of $23,810. The building was to be constructed according to plans and specifications made by one Edward A. Nolan, who acted as architect and superintendent of construction, and pursuant to one of the requirements of the contract the contractor executed a construction bond with appellant as surety therein in the sum of $12,000, and commenced work on the building. Along in August full payment of the contract price had been made to the contractor with the exception of fifteen per cent. which was to be reserved until the building was completed free of all claims for liens, and it then appeared there were lienable claims outstanding, amounting to about $20,000, while the building was incomplete. The contractor failed to pay the claims or to finish the building, whereupon appellee, about the 15th of August, called upon appellant to complete the job according to contract, and on its refusal took over the work and carried it on to completion. This cost appellee over $2,000, and in addition thereto he was compelled to tear out and rebuild certain parts of the work which had not been done in accordance with the contract. The various claimants of liens for labor and materials filed their liens in due form, and thereafter brought suit in the superior court to foreclose the liens. Appellant was duly notified of all these proceedings, but took no steps to resist the claims, and appellee therefore employed counsel and defended them himself. Judgments were entered upon these various claims, and in order to protect the premises from foreclosure appellee paid the judgments. The total amount of the judgments so paid and the extra expense caused appellee by reason of the breach of the contract, after deducting therefrom the fifteen per cent. of the contract price which he had retained, was considerably in excess of $12,000, the penalty of the bond.

During the course of the trial appellant attempted to show that many changes which departed from the original plans and specifications had been made by the contractor in the construction of the building under the oral orders of Nolan, the architect and superintendent, and that such changes had increased the cost of construction over seven thousand dollars. All oral evidence thereof was rejected by the court on the ground that the contract limited changes for which appellee should be responsible to those made in writing, and the principal assignments of error are based on appellant's claim, first, that these changes so far altered the original contract as to release it from any liability as surety therefor, and, second, that if it was not so released, it was entitled to set off as against appellee's claim for damages the reasonable value of the changes made under the orders of Nolan.

In former times when sureties were practically invariably unpaid and became such merely for the accommodation of the principal obligor, the rule of *strictissimi juris* was applied to the relationship, and it was generally held that any material change in the contract without the consent of the surety released the latter. Of recent years, however, the situation has greatly changed, and many corporations are organized which make a business of becoming sureties on bonds of the character in question in this suit, for compensation. We have had this matter before us in the case of *Lassetter* v. *Becker,* 26 Ariz. 224, 224 Pac. 810, and held therein that contracts of this nature may be more properly termed contracts of insurance than of sureties, and the legislature has approved this holding by classifying such companies as insurance companies and subjecting them to regulation as such. Chapter 36, Rev. Code 1928 (§ 1773 et seq.). The rule of *strictissimi juris* therefore does not obtain, but the contract will be construed most strongly against the

surety and in favor of the indemnitee as are other contracts of insurance. *New York Indemnity Co.* v. *May,* 37 Ariz. 462, 295 Pac. 314.

By the terms of the bond the contract and specifications must be construed with it in determining the rights and liabilities of the parties. The conditions of the contract, bond, and specifications necessary for us to construe in determining the nature of the obligation of appellant read as follows:

"Whereas, the Principal and the said William G. Lentz have entered into a certain written contract dated May 6th, 1929, for the construction of a Stadium .100'-0"x129'-6" on the N. half of Lot 8, Block 1, Neahrs Addition to the City of Phoenix Arizona, all as set forth in said contract which is attached to and made a part of this bond:

"Now therefore, the Condition of this obligation is such that if the said Principal shall faithfully perform said contract on his part and shall faithfully indemnify and save harmless said William G. Lentz from all costs and damage which it may suffer by reason of his failure so to do and shall pay or cause to be paid in full for all materials, provisions, provender, or other supplies, or teams, or rental of machinery, tools and implements used and employed in any manner in and about said Contract, and for all work or labor done under said contract of every kind, then this obligation shall be void; otherwise to remain in full force and effect.

"Provided, however, that no suit or action on this bond to recover for labor performed or materials furnished in respect to the work herein referred to shall be sustained unless the same be commenced within six months after the time the claimant files his lien as and when provided by law, or if he files no such lien, unless the suit or action be commenced within six months after his right of action on this bond accrues." (From the bond.)

"Witnesseth: That the said party of the first part, for and in consideration of the payments to be made to —— by the said second party as hereinafter provided does hereby covenant, contract and agree to furnish

all labor and material and construct a Stadium 100'-0"x129'-6" on the N. half of Lot 8, Block 1, Neahrs addition to the City of Phoenix, Arizona, and furnish a satisfactory Surety Bond for 50% of the amount of the contract guaranteeing the faithful performance of this contract and the full payment of all bills for labor and materials. Building to be built according to the plans, specifications and drawings (which are declared to be a part of this agreement), made by Edw. A. Nolan Architect (acting as Agent for said Owner), in a good substantial and workmanlike manner, to the satisfaction of and under the direction of the Superintendent. . . .

"It is also further agreed that the said party of the second part, may make all alterations by adding, omitting or deviating from the aforesaid plans, drawings and specifications, or either of them, which he shall deem proper and the said Architect shall advise, without impairing the validity of this contract, and in all such cases the said Architect shall value or appraise such alteration, and add to or deduct from the amount herein agreed to be paid to the said first party the excess or deficiency occasioned by such alteration. . . . " (From the contract.)

"(18) The Owner without invalidating the Contract, may make changes by alterations, adding to or deducting from the work, the Contract sum being adjusted accordingly. All such work shall be executed under the conditions of the original Contract, except that any plan for extension of time caused thereby shall be adjusted at the time of ordering change. No change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the change and no claim for extras or an addition to the Contract sum shall be valid unless so ordered." (From the specifications.)

It will be seen upon a careful examination and comparison of these documents that appellant guaranteed the faithful performance of the contract by the contractor, and agreed to indemnify appellee for all

costs and damages without exception which he might suffer by reason of a failure on the part of the contractor. It also appears that the contract might be altered by appellee at will on condition that a proper allowance should be made to the contractor if the alteration increased or diminished the cost of the job, but that such changes should be made only in pursuance of a written order from appellee or a written order from the architect stating appellee had authorized the changes. If, therefore, any changes were made in the contract in the manner specified, appellee would be bound to pay for such changes and the contractor, and in case of action on the bond, his surety would be entitled to credit for the value thereof. On the other hand, it was expressly stipulated that appellee should not be liable for any extras or additions to the contract unless they were ordered in form and manner as provided therein. If he were not liable, the contractor obviously would not be entitled to a credit therefor on the contract price, nor could his surety claim such credit if sued on the bond. *Langley* v. *Rouss,* 185 N. Y. 201, 7 Ann. Cas. 210, 77 N. E. 1168; *White* v. *San Rafael R. Co.,* 50 Cal. 417. It is true that appellee might waive this provision in regard to the method of making changes, since it was made for his protection. *Gehri & Co.* v. *Dawson,* 64 Wash. 240, 116 Pac. 673; 9 C. J. 846. And if he did make such waiver, the contractor, and naturally his surety, would be entitled to credit for the value of the changes. Appellant, however, did not offer to prove that appelleee authorized or ratified the changes concerning which it attempted to introduce evidence either orally or in writing, but merely that the architect ordered them orally. The fallacy of appellant's position is in regard to the authority of the architect to bind the owner. It contends, and truly, that under the provisions of the contract the architect was the agent of the owner, but it overlooks or disregards the fact that

such agency was not an unlimited one, but one which was specifically limited, so far at least as changes in the contract were concerned, by the provisions that such changes *must be in writing,* either signed by the owner or by the architect, and in the latter case the order must specify that the owner had authorized the change. The contractor and his surety knew of the limitation of the agency, and it was incumbent on appellant to prove that appellee had waived that provision of the contract and authorized the architect to make oral changes therein. There was no evidence either introduced or offered of any changes authorized by appellee except in two instances, and he allowed the extra compensation for one of them and as to the other, when authorizing the change, stipulated expressly that it must be made without cost to him.

If the contractor either fraudulently, as suggested by appellee, or in good faith made changes in a manner not specified in the contract, he cannot hold appellee for the value thereof without proving that the latter consented thereto, and he, and therefore his surety, must stand the loss. The very purpose of the bond is to guarantee appellee against a breach of the contract, intentional or unintentional, by the contractor, and the surety has insured, in effect, that the contractor will carry out the agreement.

We hold, therefore, that so far as changes in the contract made by the permission of the owner are concerned it was contemplated in the bond that such changes might be made, and so far as changes made without the consent of the owner are involved, they constitute, not a change in the contract, but a breach thereof by the contractor for which the owner, if damaged, may recover from the surety. The court therefore rightly rejected evidence of any changes authorized orally by the architect as not being within the

scope of his authority as agent of appellee, and rightly held that changes made with the consent of the owner were within the terms of the contract and did not avoid the bond.

The next question involved is whether the provision of the contract authorizing the owner to retain fifteen per cent. of the contract price is full settlement of the liability of appellant. This provision reads as fol-- lows:

"It is agreed by the parties, that Fifteen per cent. of the contract price shall be held by the Owner as security for the faithful completion of the work, and may be applied, under the direction of the Superinten- dent, in the liquidation of any damages under this contract . . . "

It is suggested that this is an agreement that fifteen per cent. of the contract price shall constitute liquidated damages in case of breach of the contract, and since the owner retained the fifteen per cent. this is all he may recover. We think this is not worthy of serious consideration. If it were the intent of the contract that the money which the owner at all times had in his own hand should be full compensation for any breach of contract, a bond was unnecessary and worthless under any circumstances. The provi- sion does not fix liquidated damages, but merely pro- vides that the amount held out may be credited upon any damages incurred, and this was done by appellee when he instituted his action.

The next question is as to the allowance of attor- ney's fees. It is contended that if the attorney's fees were allowed on the theory that they were granted by statute, such provision would be uncon- stitutional, and appellant cites *Union Terminal Co. et al.* v. *Turner Const. Co.,* (C. C. A.) 247 Fed. 727, 11 A. L. R. 880, in support of this contention. If the attorney's fees involved in this action were claimed as being authorized by a statute attempting

to fix such a fee as costs, recoverable only by one of the parties to the suit, it would indeed be unconstitutional. We think, however, they rest rather on the condition of the bond that appellant should save appellee harmless from all damages and costs which he might suffer by reason of the failure of the contractor to perform his contract. Under the contract it was unquestionably the duty of the contractor to pay in full for all materials and labor used on the job. This he failed to do, and the parties furnishing such material and labor filed liens against the property, and afterwards brought suit on the liens. Although notified of these liens, the contractor and appellant failed to defend against them, and in order to protect his property appellee was forced to defend them. Obviously one of the requirements in defending a lawsuit is the employment of an attorney, and we think a reasonable fee for such attorney is as much an item of the costs and damages which appellee incurred by reason of the failure of the contractor to carry out his contract as the payment of the materialmen and laborers themselves. No objection was made to the reasonableness of the attorney's fees asked for, if any should be due.

The next question raised is that this suit was not brought in the time provided within the bond. It was filed September 30, 1930, nearly a year after the liens were filed, and if the provision in the contract limiting the time in which suit on the bond may be brought to six months is a valid one, the statute had of course run.

Chapter 36 of the 1928 Code deals with the general subject of insurance, and section 1800 in said chapter reads as follows:

"No insurance company or association transacting business in this state shall make, issue or deliver therein any policy or contract of insurance containing any condition, stipulation or agreement depriving

the courts of this state of jurisdiction of actions, or limiting the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues; and any such conditions, stipulation or agreement shall be void. . . . "

"Insurance company" is defined in section 1773 as including "all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance," while the different kinds of insurance covered by the chapter are classified and defined in section 1774, and subdivision 4 of this section reads as follows:

"4. fidelity and surety insurance, including the guaranteeing of persons holding places of public or private trust; *guaranteeing the performance of contracts other than insurance policies;* or guaranteeing or executing all bonds, undertakings and contracts of suretyship. . . . " (Italics ours.)

We think it is obvious from these different sections that when the legislature imposed the limitations set forth in section 1800, *supra,* it intended to and did include contracts of precisely the kind set forth herein. The plea of the statute of limitations is therefore not well taken.

This disposes of all the objections on the merits. There is one question of procedure which we have reserved for the last. Sections 3731, 3732 and 3836, Rev. Code 1928, read as follows:

"3731. . . . The acceptor of a bill of exchange or any other principal obligor in any contract may be sued either alone or jointly with any other party who may be liable thereon; but judgment shall not be rendered against such other party not primarily liable unless judgment shall have been previously, or be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his action against such principal obligor."

"3732. . . . The assignor, indorser, guarantor and surety upon a contract, and the drawer of a bill, which has been accepted, may be sued without the maker, acceptor or other principal obligor, when the latter reside beyond the limits of the state, or in such part of the same that they cannot be reached by the ordinary process of law, or when their residence is unknown and cannot be ascertained by the use of reasonable diligence, or be dead, or insolvent."

"3836. . . . All parties to a joint obligation, including negotiable paper, and partnership debts, shall be severally liable also for the full amount thereof. They may be sued thereon jointly or separately joining one or more, and judgment may be rendered in each, without barring an action against any of those not included in such judgment, or releasing any of those not sued; the court, may, however, require the plaintiff to bring in as defendants all parties jointly liable on the obligation in the action, and any subsequent judgment shall be for the amount unsatisfied."

We have construed these sections in the cases of *Rhoton* v. *Woolford,* 24 Ariz. 562, 211 Pac. 858, *United States Fidelity & G. Co.* v. *Alfalfa Seed & L. Co.,* 38 Ariz. 48, 297 Pac. 862, *First Nat. Bank* v. *Standard Acc. Ins. Co.,* 38 Ariz. 77, 297 Pac. 864, and *Hill et al.* v. *Alfalfa Seed & L. Co.,* 38 Ariz. 70, 297 Pac. 868, and have held that a surety may be sued separately only when the plaintiff brings himself strictly within the terms of the exceptions set forth in section 3732, and that in the absence of such showing a judgment may not be entered against a party not primarily liable upon a contract, such as a surety, until it is previously or at the same time rendered against the principal debtor. This rule was not complied with in the present case. It is true that the contractor was made a party to the action, but he was not served, and therefore judgment could not be rendered against him. Appellee did not make the showing required by section 3732, *supra,* as

preliminary to dismissing the action as against the contractor, and therefore could not take judgment against the surety.

Had the matter been properly and seasonably called to the attention of the trial court by appellant, it would unquestionably have been reversible error for it to render judgment against appellant, since the record shows clearly that the contractor was alleged to be a resident of the state of Arizona and was actually in court at the beginning of the action, and testified on the stand during its course. This is not seriously contested, in fact, by appellee, but he contends that the question was not presented in the lower court, but was raised for the first time on appeal. The record shows that appellee signified plainly before the trial commenced his intention of asking judgment against appellant alone, and that the latter made no suggestion to the court of the necessity of serving the contractor as preliminary to a judgment against it, merely mentioning the fact that he was present in court as a witness.

The purpose of the sections under construction is to allow the surety who is subrogated to the rights of his principal to have it definitely determined without the necessity of further action as to just what his recovery against the principal is to be, so as to bind the latter. We think, therefore, that as was said in *Rhoton* v. *Woolford, supra,* it was incumbent on appellant to raise the question, since the statute was for its protection. In this case, of course, it could not be raised by demurrer or answer. But we think it could and should have been raised by motion when it appeared that appellee intended to proceed against appellant alone, and that having failed to do this appellant is deemed to have waived the defect of parties. It is the duty of litigants to call distinctly and positively to the attention of the trial court any rights of which they know and to which they

are entitled so that such court may have the opportunity to do justice and follow the law. Counsel are presumably much more familiar with their own cases than is the trial court, and it is not the duty of that court to search for concealed traps in pleading or procedure. We think that when it is apparent from the record that the parties know of their rights and fail to ask the court to protect them, they should generally be deemed to have waived such protection.

There being no material error in the record, the judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.