**CENTRAAL STIKSTOF VERKOOPKAN-TOOR, N.V., Appellant,**

v.

**ALABAMA STATE DOCKS DEPART-MENT and Gulf American Fire & Casualty Company, a Corporation, Appellees.**

No. 24045.

United States Court of Appeals
Fifth Circuit.

Aug. 15, 1969.

Rae M. Crowe, John Grow, Mobile, Ala., for appellant; Armbrecht, Jackson & DeMouy, Mobile, Ala., of counsel.

Mitchell G. Lattof, Mylan R. Engel, Special Asst. Attys. Gen., Engel & Smith, Diamond, Lattof & Favre, Mobile, Ala., Robert P. Bradley, Asst. Atty. Gen., MacDonald Gallion, Atty. Gen., Montgomery, Ala., for appellees.

Before GODBOLD and SIMPSON, Circuit Judges, and McRAE, District Judge.

SIMPSON, Circuit Judge.

On September 24, 1965, appellant, Centraal Stikstof Verkoopkantoor, N.V. (C.S.V.), filed a complaint against Alabama State Docks Department (Docks) and Gulf American Fire & Casualty Company (Gulf). The complaint alleges that Docks had breached its storage contract with C.S.V. Relief was sought

against Gulf as surety on its bond with Docks. Both Docks and Gulf moved to dismiss the complaint on the grounds that (1) Docks was an agency of the State of Alabama and immune from suit, and (2) if the immunity defense had been waived, C.S.V. was barred by the two year statute of limitations set out in the Interstate Commerce Act, Title 49, U.S.C., Section 16(3)(b).[1] The motions to dismiss were granted by the court below under Rule 12, F.R. Civ.P. as to both Docks and Gulf and this appeal was taken. As to Docks, we affirm. We reverse and remand for further proceedings below as to Gulf.

In Centraal Stikstof Verkoopkantoor, N.V., v. Walsh Stevedoring Co., 5 Cir. 1967, 380 F.2d 523, C.S.V. unsuccessfully attempted to recover damages from its stevedore Walsh and Dock's liability insurer, United States Fidelity & Guaranty Company. Consequently C.S.V. now attempts to fasten liability upon Docks and its statutory surety as a public warehouseman, Gulf American. The facts are set out below.

C.S.V. unloaded a cargo of commercial fertilizer called nitrolime in good condition in September 1959 in a warehouse of Docks in Mobile, Alabama. A uniform warehouse receipt was issued. The nitrolime was damaged when a sprinkler system in the warehouse was activated. The contention of C.S.V. is that the nitrolime was improperly stored in that it was piled over the sprinkler system and the corrosive tendencies of the nitrolime on the metal components of the sprinkler system caused it to discharge.

This résumé demonstrates a fact which will prove crucial in this Court's determination, i. e.: Docks' role was solely that of a warehouseman. C.S.V.'s own stevedore unloaded the ship which carried the nitrolime. The stevedore transferred the fertilizer to Docks' warehouse. There the goods remained in storage until the accident (a period of more than three months). It is apparent that Docks was never involved in the transportation of the fertilizer. It merely stored the nitrolime for a fee.

I.

*Alabama State Docks Department*

The appellant states that the federal courts have jurisdiction over this controversy because Docks in addition to the Treaty of Friendship, Commerce. and Navigation between the United States and the Netherlands, is subject to a myriad of Federal statutes and regulations; i. e.: The Interstate Commerce Act, Title 49, U.S.C., § 1 et seq.; the Shipping Act, Title 46, U.S.C., § 801 et seq.; and various Coast Guard regulations relating to the proper storage of cargo, 33 C.F.R. 126.01, et seq. C.S. V. then concludes that since Docks has generally entered into the sphere of interstate and foreign commerce, Docks has waived its sovereign immunity[2] under the principles enunciated in Parden v. Terminal Railway of Alabama State Docks Department, 377 U.S. 184, 196, 84 S.Ct. 1207, 1215, 12 L.Ed.2d 233 (1964):

"Where a state's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but within a sphere—whether it be interstate compacts or interstate commerce—subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law."

At first blush, the appellant's complaint appears to support the assertion that Docks has entered into a federally

---

1. For reasons developed subsequently, C.S.V. has cited no cause of action recognizable under the Interstate Commerce Act. Naturally then that statute of limitations does not apply and no discussion will be made of the issue. The Alabama Statute of six years then indisputably applies. Title 7, Code of Alabama § 21.

2. The immunity of Docks from suit was established in State Docks v. Barnes, 225 Ala. 403, 143 So. 581 (1932). The Supreme Court of Alabama there held that suit against the State Docks was precluded by Art. I, § 14 of the Alabama Constitution.

regulated sphere. If this is true, under the *Parden* principle the question of waiver of sovereign immunity would be one of federal law. Close scrutiny reveals that C.S.V. has no right to federal relief.

 C.S.V. can gain little solace from the Treaty of Friendship, Commerce and Navigation. The provisions of the Treaty relied upon by C.S.V. merely provide that nationals and companies of the Netherlands will have fair and equitable treatment in this country. These provisions do not aid C.S.V. because Docks is not attempting to apply Alabama law in a manner which discriminates against the Netherlands or C.S.V. To the contrary, *anyone* seeking to sue Docks as an agency of the State of Alabama would have to surmount the sovereign immunity question. Further we do not deem a mere entry into an area regulated by international treaty as an automatic waiver of sovereign immunity. As long as the sovereign immunity claim does not prevent federal relief which would otherwise be attainable, we see no virtue in invoking federal jurisdiction. Here no relief is possible because no discrimination is evidenced.

The appellant steadfastly maintains that Docks entered into a federal zone because it operates a terminal railroad, provides wharfinger services, operates United States bonded warehouses, furnishes harbor pilots, submits to Coast Guard inspections and regulations, and complies with the requirements of the Interstate Commerce Act and the Shipping Act when applicable. The real question here is not whether Docks as a railroader, or a wharfinger, or as an employer of harbor pilots is regulated by federal law. Rather, the essential issue is whether Docks as a warehouseman has entered into a federally regulated sphere in which a federal remedy is available. To determine this question an examination of the statutes alleged in the appellant's complaint is necessary.

 The reliance by C.S.V. upon the Shipping Act, Title 46, U.S.C., Section 801 et seq. is misplaced. Admittedly the Section 801 definition of common carriers covered by the Act includes "other person[s] * * * carrying on the business of forwarding or furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water". Thus ostensibly, Docks is covered by the Act. However, assuming arguendo that this Court can assert jurisdiction without the case being first submitted to the Maritime Commission, C.S.V. does not cite and we cannot find any statutory provision in the Shipping Act which provides a remedy to a shipper for damages to cargo allegedly caused by a warehouseman. Thus C.S.V. has no federal remedy under the Shipping Act.

The appellant more emphatically argues that certain provisions of the Interstate Commerce Act, Title 49, U.S.C., Sections 3(1), 8, 9, and 20(11) provide a federal cause of action. C.S.V. claims that Docks is a common carrier under the Act because Title 49, U.S.C., § 1 states that:

"(1) The provision of this chapter shall apply to common carriers engaged in—

(a) The *transportation* of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under common control, management, or arrangement for a continuous carriage or shipment;" (emphasis added)

and Title 49, U.S.C., § 1(3)(a) states in part:

"The term *'transportation'* as used in this chapter shall include * * * all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, *storage* and handling of property transported." (emphasis added)

The appellant argues that these provisions should be interpreted as providing coverage over a person who stores goods

because he is rendering a service in connection with transportation and is therefore a common carrier.

■ We disagree. As we read the language, Section 1(3) (a) states that services rendered by a common carrier in connection with transportation of goods shall be covered by the Act. The section cannot be read to classify mere storers as common carriers.

This view is consistent with the common law which has traditionally refrained from classifying warehousemen as common carriers. See 56 Am.Jur., Warehouses 36, p. 321; 93 C.J.S. Warehousemen & Safe Depositaries § 2, p. 397. The essential historical difference between the two is that a common carrier is charged with a higher standard of care than the warehouseman. As a further indication that a warehouseman is not contemplated as a common carrier under the Interstate Commerce Act, we note that the Carmack Amendment, Title 49, U.S.C., § 20(11) which provides a remedy for damages to cargo caused by common carriers, has not been applied to warehousemen. General American Transp. Corp. v. Indiana Harbor Belt R. Co., 7 Cir. 1951, 191 F.2d 865. Consequently we conclude that the various sections of the Interstate Commerce Act cited by the appellant are not applicable because Docks is not a common carrier in this particular set of circumstances.

■■ C.S.V. is then left with only the Coast Guard regulations to support its argument that C.S.V. is entitled to seek federal relief. Unquestionably these regulations apply and have been enforced upon Docks. The hard fact remains however that these regulations provide no cause of action for a private concern which is seeking damages for destroyed cargo. The rules are essentially safety regulations and can only be enforced by the United States.

The appellant relies on Lauritzen v. Chesapeake Bay Bridge and Tunnel District, E.D.Va.1965, 259 F.Supp. 633, modified 4 Cir. 1968, 404 F.2d 1001, for the proposition that acquiescence to federal regulations constitutes a waiver of sovereign immunity. That case is distinguishable because the accident which gave rise to the cause of action occurred on navigable waters which invoked federal admiralty jurisdiction. There "but for" the sovereign immunity defense the injured party would have been able to maintain a cause of action under federal law. Here C.S.V. would not have been able to state a federal cause of action even if Docks had been a non-state corporation engaged in the warehouse business. In this case, the complainant is not able to invoke federal law and thus sovereign immunity is not acting as a bar to federal relief.

The appellant contends further that even if there is no applicable specific federal statute or regulation, the holding in *Parden,* supra, stands for the proposition that once entry into a federal sphere is made, sovereign immunity is waived as to all causes of action which might arise out of that entry.

■ Although the language in *Parden,* supra, is broad and logically gives rise to liberal construction, the case when studied as a whole promulgates a more conservative rule. In that case, an employee of the terminal railway operated by Alabama State Docks was barred from recovery under FELA because of the State's claim of sovereign immunity. Thus the employee was barred from federal relief by this Circuit simply because he was a state employee as opposed to an employee of a private concern. The Supreme Court concluded that the sovereign immunity claim was waived by the State's entry into a federally regulated sphere. In the case at bar there is no conflict between the immunity claim and federal law since federal law provides no relief against warehousemen for damage to stored goods. Thus where there is no paramount federal interest or right to be protected, we are not prepared to say that the question of waiver of sovereign immunity should be determined

by federal law. Accordingly we hold that in this case since there is no specific federal relief for damage allegedly caused to goods by a warehouseman, the question of waiver is to be determined by state rather than federal law.

Before this Court can investigate whether immunity has been waived under state law, jurisdiction must be demonstrated. Since we have previously found that C.S.V. has no federal cause of action, diversity of citizenship under Title 28, U.S.C. § 1332, is the only jurisdictional alternative. The essential question is whether the State of Alabama is the real party in interest. If Docks is a mere alter ego of the State, no diversity exists because a state is not a citizen. The question of whether or not Docks is a distinct separate legal entity from the state must be determined by state law. Louisiana Land & Exploration Co. v. State Mineral Board, 5 Cir. 1956, 229 F.2d 5; Department of Highways of La. v. Morse Bros. & Associates, Inc., 5 Cir. 1954, 211 F.2d 140. The Alabama Supreme Court in State Docks Commission v. Barnes, 1932, 225 Ala. 403, 143 So. 581, determined that the Docks Commission was not a separate entity from the state. A careful study of the enabling legislation creating the Alabama State Docks Department, Title 38, Code of Alabama, Section 1 et seq., reveals the basis for the Alabama court's holding. The statute allows the Docks department to develop harbor facilities *in the name of the State,* title to all property vests in the *State of Alabama;* suit is to be brought in the *name of the state.* cf.

DeLong Corporation v. Oregon State Highway Commission, supra.[3] This incomplete but adequately illustrative summary of the statutory language makes it clear that the Docks is a mere alter ego of the state. Consequently we cannot determine if under Alabama law there has been a waiver of sovereign immunity because the federal courts have no jurisdiction to determine the matter. Therefore we affirm the district court's dismissal as to the Alabama State Docks Department without passing upon and without prejudice to C.S.V.'s right to maintain a cause of action in state court.

## II.

### Gulf American Fire & Casualty Company

There are two principal issues here. First, did the suretyship agreement between Docks and Gulf cover the nitrolime stored by C.S.V.?[4] Second, if coverage exists, can Gulf as surety be bound even if Docks can avail itself of the sovereign immunity defense?

Since the motions to dismiss were granted early in the pretrial stages of the litigation there were no factual findings. Consequently if it is determined that Gulf can be sued, a remand for a determination of the coverage question will have to be made. Thus assuming arguendo that the suretyship agreement covers the warehouse in question we address ourselves to the second issue, i. e.: Can Gulf as surety be liable on the bond even if Docks as principal is not?

3. Dacey v. Florida Bar, Inc., 5 Cir. 1969, 414 F.2d 195. See also the very scholarly and well reasoned opinions discussing the interplay between the Eleventh Amendment, state declared immunity and diversity of citizenship which may be found in S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, D.N.J.1967, 268 F.Supp. 568 and DeLong Corporation v. Oregon State Highway Commission, D. Oregon 1964, 233 F.Supp. 7, affirmed 9 Cir. 1965, 343 F.2d 911, cert. denied 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965).

4. All public warehousemen in Alabama are required to procure a bond with a corporate surety to pay any person aggrieved, his damages for breach of the duties of a public warehouseman. Title 2, Code of Alabama, Sections 573, 574. Docks acquired such a bond from Gulf. C.S.V. alleges that the bond covers all the warehouse facilities. Docks argues that it covers only the public grain elevator.

458

Gulf urges the applicability of the general principles of suretyship law that the surety on a bond is not liable unless the principal is, and that the surety therefore may plead any defense available to the principal. See City of Birmingham v. Trammel, 1958, 267 Ala. 245, 101 So.2d 259, 262; 50 Am.Jur., Suretyship, § 135, p. 994; 72 C.J.S. Principal and Surety § 13, p. 522; 24 A.L.R. 838. Gulf concludes that since sovereign immunity prevents Docks from being liable for the damages, it, as surety, is also not liable.

■ The asserted principles are common rubrics of the law of suretyship. We conclude nevertheless that they are of no avail to Gulf in the present situation, which falls under a well-recognized exception. "Where there is no fraud, duress, deceit or violation of law in procuring the contract, the surety or guarantor of a principal who is incapable of contracting, is bound, although the principal is not". 24 A.L.R. 838, 839. See also Nelson v. Hinchman, 8 Cir. 1902, 118 F. 435; 50 Am. Jur., Suretyship, § 142, p. 999; 72 C.J.S. Principal and Surety § 14, p. 522. In South Carolina State Highway Dept. v. Fort Fetterman, E.D.S.C.1956, 148 F. Supp. 620, affirmed 4 Cir. 1957, 242 F.2d 799, cert. denied 355 U.S. 826, 78 S.Ct. 35, 2 L.Ed.2d 40, the court relied on this exception to support its holding that "a surety company * * * would * * * become liable under the bond even though it may not be enforceable against the Highway Department or the State of South Carolina because of the lack of authority of its agents to execute such bond".

■ Although no question is raised with reference to the authority of Docks to enter into the surety agreement, the exception logically extends to the present situation. Here, Gulf entered into the surety agreement knowing that Docks was a state agency and presumably could not be sued. To hold that a surety may rely on its principal's sovereign immunity to avoid payment of damages would provide a windfall to the surety. The surety would receive consideration for its promise of guaranty without assuming the concomitant risk of payment. Therefore we hold that Gulf, the surety here, is bound by the surety agreement even though its principal is immune from suit. Consequently we reverse the district court's granting of the motion to dismiss as to Gulf and remand.

In view of the complexity of this case, we review our holdings for the benefit of the parties and the district court. We affirm the dismissal as to Docks. No federal cause of action is stated against Docks, and this conclusion carries with it the issue of whether Docks has, under federal standards, waived immunity from being sued in the federal courts. There is no diversity of citizenship to support federal jurisdiction as to Docks over a non-federal claim for breach of contract. As to Gulf, diversity jurisdiction is present, and, even if sovereign immunity existed under state law as to Docks, Gulf could not avail itself of that defense.

Essentially then, on remand, two problems will present themselves. First, was there a breach of the storage contract under the applicable Alabama law? Second, did the suretyship agreement contemplate coverage of the warehouse facilities? If an affirmative answer is reached as to both questions, Gulf will be liable as surety even though Docks cannot be sued.

Affirmed in part and reversed and remanded in part.