720 P.2d 520

**SMITH PLUMBING COMPANY, INC., an Arizona corporation, dba White Mountain Supply Company, Plaintiff/Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, a Connecticut corporation, Defendant/Appellee,**

**White Mountain Apache Tribe, dba Apache Development Enterprise, Defendant/Intervenor/Appellee.**

No. 2 CA–CIV 5072.

Court of Appeals of Arizona, Division 2.

July 17, 1984.

Killian, Legg, Nicholas & Fischer by Charles W. Wirken, Mesa, for plaintiff/appellant.

Robert C. Brauchli, Whiteriver, for defendant/appellee and defendant/intervenor/appellee.

BIRDSALL, Chief Judge.

This appeal was taken from the order of the superior court dismissing appellant's complaint. A brief recitation of the facts underlying the action follows.

In 1963, the Tribal Council of the White Mountain Apache Tribe (Tribe) created the White Mountain Apache Housing Authority (Authority) for the purpose of receiving financial assistance from the federal government for the construction of low income housing. In 1968, the Tribe created the White Mountain Apache Development Enterprise (Enterprise) for the purpose of undertaking construction projects on the reservation. In 1978, the Authority contracted with the Enterprise for the construction of four low-income housing projects to be financed with funding received from the United States Department of Housing and Urban Development (HUD).

Pursuant to HUD regulations, the Enterprise obtained four performance-payment bonds pertaining to each construction contract from appellee Aetna Casualty & Surety Company (Aetna). Under the terms of these bonds, which are standard form doc-

uments prepared by HUD for such projects, the Enterprise as principal and Aetna as surety jointly and severally bound themselves to the Authority, as owner of the projects, in the amount of the individual contract sums, provided that:

... if the Principal shall well, truly and faithfully perform its duties, all the undertakings, covenants, terms, conditions, and agreements of said contract ... and if he shall satisfy all claims and demands incurred under such contract, ... *and shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in such contract,* and any authorized extension or modification thereof, *including all amounts due for materials,* lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment and tools, *consumed or used in connection with the construction of such work,* and all insurance premiums on said work, and for all labor, performed in such work whether by subcontractor or otherwise, then this obligation shall be void; otherwise to remain in full force and effect.

\* \* \* \* \* \*

PROVIDED, FURTHER, that no final settlement between the Owner and the Contractor shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied. (Emphasis supplied)

The Enterprise entered into a subcontract with G, S & D Plumbing, apparently a non-Indian business, to supply all plumbing materials and labor for the installation of the plumbing for the housing projects. The appellant, an Arizona corporation, supplied G, S & D outside the reservation with plumbing supplies for the projects but apparently was never fully paid for the materials by G, S & D. The present action was filed in the Gila County Superior Court, naming the Authority and Aetna as defendants.[1] The complaint sought relief against the Authority on a theory of unjust enrich-

ment, and against the Authority and Aetna through the performance-payment bonds. Aetna and the Authority filed a motion to dismiss the complaint, which was joined in by the Tribe "... which has not been named in this lawsuit; but who is an indispensable party to the lawsuit if relief is to be obtained against the named defendants ... without submitting to the jurisdiction of this Court...." The basis for the motion was the parties' contention that the Tribe was an indispensable party to the lawsuit, that the Tribe was immune from suit, that this immunity inured to the benefit of Aetna and the Authority, and that the tribal court had exclusive jurisdiction over the cause of action. In denying the motion, by order dated March 14, 1982, the court ruled as follows:

The Court finds that the White Mountain Apache Tribe is a dependent sovereignty and not subject to jurisdiction of the Arizona Superior Courts; the Court also finds that the White Mountain Apache Housing Authority is a subordinate economic organization of the Tribe; and the Court further finds that there is a legitimate question of fact as to whether the waiver of indemnity [sic] signed by the Housing Authority subjects it to the jursidction [sic] of the State Court and thereby subjects AETNA as well. THEREFORE, the Motion to Dismiss is denied with leave of Counsel to file new motions addressed to the effect of the waiver.

The motion to dismiss was apparently renewed as to the Authority and was again denied on the basis of the court's finding that the Authority had waived its immunity from suit in state court.

Following this order, the Enterprise moved to intervene in the lawsuit as a party defendant pursuant to Rule 24, Arizona Rules of Civil Procedure, 16 A.R.S., on the grounds that as the principal obligor on the bonds it was an indispensable party to the lawsuit and that it was obligated to indemnify Aetna and the Authority for any

---

1. A prior action against G, S & D, the Enterprise and Aetna filed in the United States District Court for the District of Arizona was dismissed for lack of subject matter jurisdiction.

judgment obtained against them. The motion was not opposed by appellant and was granted by the court. The Enterprise filed an answer, alleging *inter alia* lack of personal and subject matter jurisdiction, and both sides commenced discovery proceedings.

On May 9, 1983, appellant voluntarily dismissed the Authority from the lawsuit. On September 1, 1983, more than a year after the court's order granting leave to intervene, the Enterprise and Aetna filed a motion to dismiss on essentially the same grounds set forth in the prior motion of Aetna and the Authority. The court granted this motion, holding that it lacked jurisdiction over the Tribe and its agencies, and further finding that "... as a matter of law, the surety company cannot be sued directly...." The basis for this latter holding was the court's prior finding that, since the Authority had been dismissed from the lawsuit, "... there is no longer a conduit from the plaintiff to the surety company."

■ Although this appeal was taken from the court's order dismissing the complaint as to both the Enterprise and Aetna, appellant has sought relief in this court only as to Aetna and stated in its brief that it did not oppose the motion to dismiss as to the Enterprise. We therefore conclude that appellant has waived any claim of error as to the trial court's dismissal of the Enterprise and affirm that portion of the order, despite the substantial question presented as to whether the Enterprise's intervention in the lawsuit as a party defendant constituted a waiver of its sovereign immunity. *See United States v. State of Oregon*, 657 F.2d 1009 (9th Cir.1982).

As to Aetna, appellant raises three issues: 1) whether members of the classes named in the performance-payment bonds are entitled to seek recovery on the bonds; 2) whether a surety may be sued without joinder of the principal obligor where the latter is immune from suit; and 3) whether a principal's immunity from suit is a defense which may be asserted in an action against the surety.

■ With regard to the first issue, we have no hesitancy in holding that appellant was entitled to seek recovery on the performance-payment bonds. In *Webb Construction Company v. Crane Company*, 52 Ariz. 299, 80 P.2d 698 (1938), our supreme court quoted as "a correct statement of law" the following excerpt from 77 A.L.R., p. 83:

> The right of laborers and materialmen to recover on a bond executed in connection with public works or improvements, where the bond contains a condition for their benefit and is intended for their protection, although the public body is the only obligee named therein, and there is no express provision that such third parties shall have any rights thereunder, is affirmed by the great weight of authority. 52 Ariz. at 310, 80 P.2d 698.

*See also Ed Stearman & Sons, Inc. v. State ex rel. Union Rock & Materials Co.*, 1 Ariz.App. 192, 400 P.2d 863 (1965).

The appellees concede that the Authority is a public body, but argue that there is no express condition in the bond that the Enterprise pay any materialmen and that its only obligation thereunder is to indemnify the Authority in the event that the Enterprise fails to pay such materialmen. Contrary to appellees' contentions, the provision of the bonds quoted above is indistinguishable from that construed by the supreme court in *Webb Construction Company v. Crane Company, supra.* Further, the provision that "... no final settlement between the Owner and the Contractor shall abridge the right of any beneficiary hereunder, whose claim may be unsatisfied" clearly implies that the classes described in the bond were intended to be beneficiaries of its protection and are entitled to recover on the bond for any unsatisfied claim. Inasmuch as appellant was a third party beneficiary of the bonds, the Authority is not needed to serve as a "conduit" to the surety, and the trial court erred in dismissing the complaint as to Aetna on that basis.

Appellees raise two additional arguments in support of the trial court's dismissal of the suit as to Aetna, the first based on the doctrine of tribal sovereign immunity and the second based on the exclusive jurisdiction of tribal court.

■ The first argument is premised on the immunity of the Enterprise, as a subordinate business enterprise of the Tribe, from suit in state court, a premise which must be taken as conceded by appellant for the reasons discussed above. Appellees then argue that, because Aetna is "guaranteed" subrogation rights of a judgment creditor by virtue of A.R.S. § 12–1643, any judgment against Aetna in this action would in effect be a judgment against the Enterprise. We disagree. A.R.S. § 12–1643 provides:

A. When a person who is surety on an undertaking is compelled to pay a judgment or part thereof, or makes a payment upon a judgment by reason of suretyship, such judgment shall not be discharged by such payment but shall remain in force for the use of the surety and shall be considered as assigned to the surety together with all rights of the creditor thereunder to the extent of the payment made by the surety, and interest thereon.

B. The surety may have execution issued on the judgment in the name of the creditor for use of such surety against the principal debtor for the full amount of the payment, interest thereon, and all costs.

C. The execution shall be issued upon the application of the surety to the clerk or court, and shall be levied, collected and returned as in other cases.

A careful reading of the statute reveals that the surety's right of subrogation arises only where the creditor has obtained a judgment against the principal, not where the judgment runs only against the surety. *See First National Bank of Albuquerque v. The Standard Accident Insurance Company*, 38 Ariz. 77, 297 P. 864 (1931). Since the Enterprise's immunity from suit will preclude appellant from obtaining a judgment in this action against anyone but Aetna, no right of subrogation could arise under this statute. Further, even assuming that Aetna could overcome the obstacle of sovereign immunity in seeking to enforce a right of subrogation, since Arizona has not acquired jurisdiction over the White Mountain Apache Reservation pursuant to the Civil Rights Act of 1968, 25 U.S.C. §§ 1321–1326, the state has no authority to extend the application of its laws to Indian tribes or Indians residing on a reservation. *Francisco v. State*, 113 Ariz. 427, 556 P.2d 1 (1976); *Nenna v. Moreno*, 132 Ariz. 565, 647 P.2d 1163 (App.1982).

Appellees further argue that, since the Tribe by resolution has agreed to indemnify Aetna for any losses suffered on the bonds, the effect of a determination that Aetna may be sued alone would be to force the Tribe to choose between 1) reneging on its agreement to indemnify, in which case it would be unable to obtain such bonds in the future, or 2) awaiting a suit by Aetna to enforce its right of indemnification in tribal court, where the Tribe would be unable to secure the attendance of persons residing outside the reservation in attempting to defend on the merits, or 3) waiving its immunity and submitting to state court jurisdiction in the present action.

We note initially that the Tribe did not intervene below and is not a party to this appeal, nor has the indemnification agreement been made part of the record before us. The resolution of the tribal council pertaining to the agreement, which is part of the record, authorizes the tribal chairman to enter into the agreement on behalf of the Tribe, not the Enterprise. Accordingly, the Enterprise has no obligation under that agreement to indemnify Aetna for any judgment against it in this action. Further, the rights and obligations of the Tribe and Aetna under the indemnification agreement, as well as the Tribe's decision whether or not to honor the agreement, are separate and apart from the rights and obligations of appellant, Aetna and the Enterprise under the bonds, and are not an issue here. This agreement was not refer-

enced in the bonds, and there is no evidence that appellant was even aware of its existence until the Enterprise intervened below.

■ A more difficult question exists, however, when the arguments presented on behalf of the Tribe are applied to the Enterprise. Under general principles of suretyship, Aetna may have an implied right of reimbursement against the Enterprise for any amounts required to be paid on the bonds as a result of a judgment entered against it in this action. *See* Restatement of Security, § 104 (1941). In any action to enforce that right, however, the Enterprise is free to assert the same defense against Aetna that it has asserted against appellant, *i.e.,* its immunity from suit. Although appellees have consistently argued that both the Tribe and the Enterprise could be sued in tribal court, nothing in the record supports that contention. While the portions of the tribal code cited by appellees would support the proposition that the tribal court has subject matter jurisdiction over suits to which the Tribe or the Enterprise is a party, these provisions are not tantamount to a consent to suit, and we have been cited to no provision of the tribal code which constitutes a waiver by the Tribe or the Enterprise of their immunity from suit, regardless of the forum. Such a waiver cannot be implied, but must be unequivocally expressed. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, while a judgment in this action against Aetna may give rise to a right of reimbursement from the Enterprise, the latter's immunity from suit may deprive Aetna of any remedy. The fact that Aetna may be denied reimbursement, however, is not a basis for dismissing appellant's claim on the bonds. In light of the fact that Aetna has held itself out as guaranteeing payment of all just claims arising out of the construction projects, we cannot countenance a denial of appellant's right of action on the performance-payment bonds simply on the basis that Aetna may have placed itself in a position where it is unable to enforce its right of reimbursement against the Enterprise. Nor should the fact that the Enterprise, which will

have no liability to appellant, is faced with difficult choices arising out of its potential obligation to Aetna, preclude appellant from enforcing its own distinct rights against Aetna.

■ In essence, the present action concerns a suit by a non-Indian corporation on a third party bond issued by another non-Indian corporation. Even assuming that the circumstances surrounding the execution of the bonds occurred entirely within the reservation, our state courts are not thereby automatically divested of jurisdiction to decide the case. The limitations on state jurisdiction arising out of the status of Indian tribes as dependent sovereigns relate to the authority of the states over Indians and Indian lands. *In People of State of New York ex rel. Ray v. Martin,* 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946), reaffirming prior decisions that a state has criminal jurisdiction over offenses committed by non-Indians against non-Indians within the boundaries of a reservation, the United States Supreme Court noted that "[t]he entire emphasis in treaties and Congressional enactments dealing with Indian affairs has always been focused upon the treatment of the Indians themselves and their property." 326 U.S. at 501, 66 S.Ct. at 309. Further, the language of the Civil Rights Act of 1968 giving consent of the United States to state civil jurisdiction refers only to "... civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State...." 25 U.S.C. § 1322(a). The clear implication is that the consent of the United States to state court jurisdiction over civil actions between non-Indians, even those arising within a reservation, was not required.

■ Nor can we agree with appellees' second argument that the existence of jurisdiction in the tribal court serves to preempt jurisdiction in state court. The cases cited in support of this argument all relate to causes of action involving individual tribal members, internal tribal affairs, or enforcement of tribal ordinances. *See*

e.g., *Santa Clara Pueblo v. Martinez, supra; Fisher v. District Court of the Sixteenth Judicial District of Montana,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). None of these factors is present here. While it is true that the bonds were obtained pursuant to the requirements of the HUD regulations, nothing in those regulations establishes a procedure for enforcing the rights of claimants under the bonds, much less purports to confer exclusive jurisdiction on the tribal courts. *Cf.* 40 U.S.C. §§ 270a–270d (the Miller Act). Accordingly, we find no basis for preemption of state court jurisdiction over a private cause of action in contract between two non-Indian parties.

Having concluded that the trial court did not lack subject matter jurisdiction over the action against Aetna, we must nevertheless determine whether the other grounds presented to the trial court in support of appellees' motion were sufficient to warrant dismissal of the action as to Aetna. This requires us to address the remaining issues raised by appellant, that is, whether a surety may be sued where the principal is immune from suit and whether the surety may raise the principal's defense of sovereign immunity.

 Appellees argue that appellant is estopped from contending that the Enterprise is not a necessary party to the litigation because it did not oppose appellees' motion to intervene. This argument is without merit. Appellant's acquiescence in the Enterprise's removal of an obstacle to a suit against it in state court, which appellant could not remove on its own, cannot by any stretch of the imagination be construed as an admission that the Enterprise was an indispensable party. Nor can we agree that Rule 17(f), Arizona Rules of Civil Procedure, 16 A.R.S., requires joinder of the principal under the circumstances of this case. That rule provides:

**Actions against surety, assignor or endorser.** The assignor, endorser, guarantor and surety upon a contract, and the drawer of a bill which has been accepted, may be sued without the maker, acceptor or other principal obligor when the latter resides beyond the limits of the state, or in such part of the state that he cannot be reached by ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or insolvent.

This rule, which was taken from a statute enacted prior to statehood, requires joinder of the principal in an action against a surety unless facts are shown to exist which bring the case within one of the exceptions stated in the rule. The purpose of the rule is to enable the courts to determine the rights of all parties to a controversy in one lawsuit, if possible. *United States Fidelity and Guaranty Company v. Alfalfa Seed and Lumber Company,* 38 Ariz. 48, 297 P. 862 (1931). Once it is shown that the principal comes within one of the enumerated exceptions, however, a plaintiff may proceed against the surety alone. *First National Bank of Albuquerque v. The Standard Accident Insurance Company, supra.*

Appellant argues that either the purpose of the rule has been met when it is shown that the Enterprise is immune from suit, and therefore the rule should not apply, or that the Enterprise's immunity puts it within the exception for persons who "cannot be reached by ordinary process of law." Although we have found no cases construing this latter phrase, which has been part of the Arizona statutes since at least 1901 and has no counterpart in the federal rules, we think it was clearly intended to apply to persons who cannot be made subject to the state court's jurisdiction for whatever reason, and is broad enough to encompass the Enterprise which, although "residing" within the State of Arizona, cannot be made subject to the court's jurisdiction because of its immunity from suit. The exception having been established, joinder of

the Enterprise was not required under Rule 17(f).[2]

Finally, the appellees contend that the Enterprises's immunity from suit inures to the benefit of its surety, and that the trial court therefore properly dismissed the complaint as to Aetna on this basis. As a general rule, a surety is not liable on a bond unless the principal is liable, and therefore the surety may set up any defense available to the principal. 74 Am. Jur.2d *Suretyship* § 104 (1974); *see Spear v. Industrial Commission*, 114 Ariz. 601, 562 P.2d 1099 (App.1977). An exception to this rule exists:

> ... where the principal, when sued, takes advantage of a matter of defense which is altogether of a personal character, or where the extinction of the principal's obligation arises from a cause which originates in the law. These defenses are ordinarily of such a character that the principal, as he chooses, may insist upon them or not. 74 Am.Jur.2d *Suretyship* § 104 at 76, (1974).

Appellant argues that the defense of sovereign immunity is just such a personal defense which cannot be raised by the surety, relying on *Centraal Stikstof Verkoopkantoor, N.V. v. Alabama State Docks Department*, 415 F.2d 452 (5th Cir.1969). The plaintiff in that case sought damages for breach of a storage contract with defendant Docks Department, an agency of the State of Alabama. The plaintiff also sought to recover on the department's suretyship bond, required by statute of all public warehousemen. In holding that the surety could be sued on the bond notwithstanding the department's immunity from suit, the court concluded that the defense of immunity was analogous to the defense of incapacity to contract and therefore

within the exception of the general rule stated above. In so holding the court reasoned as follows:

> ... Here, Gulf entered into the surety agreement knowing that Docks was a state agency and presumably could not be sued. To hold that a surety may rely on its principal's sovereign immunity to avoid payment of damages would provide a windfall to the surety. The surety would receive consideration for its promise of guaranty without assuming the concomitant risk of payment. 415 F.2d at 458.

Appellees attempt to distinguish this case on the basis that, since Aetna may be sued in tribal court, it will not receive a windfall. Appellees further argue that to preclude Aetna from asserting the Enterprise's immunity from suit will defeat the purpose of the doctrine of sovereign immunity because of the Tribe's agreement to indemnify Aetna, relying on *Phelps v. Dawson*, 97 F.2d 339 (8th Cir.1938). In that case, the court rejected the argument that a deputy state fire marshall's immunity from suit was a personal privilege which could not be raised by the surety as a defense to a malicious prosecution action. The court reasoned as follows:

> ... The sole basis of such immunity is a public policy resting entirely upon the public good to be brought about by having the official action of certain classes of public officials entirely uninfluenced by apprehension of personal civil liability. [citations omitted] To allow recovery against the surety as to such official acts would (a) result in weakening (if not entirely destroying) the effectiveness of this public policy or (b) it would make it

---

**2.** We note that, although the original motion to dismiss filed by the Authority and Aetna and denied by the trial court sought dismissal for failure to join an indispensable party under Rule 19, Arizona Rules of Civil Procedure, 16 A.R.S., this ground was not urged in the subsequent motion to dismiss filed by the Enterprise and Aetna, nor has it been argued before this court. In a similar case involving contribution between Indian and non-Indian joint tortfeasors, the Supreme Court of South Dakota

reversed the trial court's dismissal for failure to join an indispensable party, finding that a judgment against the non-Indian would not be res judicata as to the Indian tortfeasor and that the plaintiffs would not have an adequate alternative remedy in tribal court, where the action would be subject to a similar motion as a result of the plaintiffs' inability to join the non-Indian tortfeasor. *Whiting v. Hoffine*, 294 N.W.2d 921 (S.D.1980).

burdensome or impossible to secure official bonds.

... It is a matter of general knowledge that there are decided practical advantages in having as surety on official bonds companies which made a business of such suretyship. It is equally well known that such companies nearly always have contracts of reimbursement from the principal upon such bonds. If they have no such contracts, the law implies such. [citations omitted] ... Therefore, the situation is that, if the surety has to pay, it turns back upon the principal—the immune official—for full reimbursement. Thus the official is liable, in a roundabout way, for the official action which this rule of public policy declares he shall not be liable for directly. Such a situation weakens, if it does not destroy, all real effect of the public policy. 97 F.2d at 342–343.

Appellees' arguments fail on two grounds. First, appellees again ignore the fact that there is nothing to prevent Aetna from raising the same immunity argument in tribal court that it has raised in state court, and thereby obtain the sort of windfall decried by the court in *Centraal Stikstof Verkoopkantoor N.V. v. Alabama State Docks Department*, N.V., *supra.* Second, with respect to the liability of the surety, the public policy which must be considered by this court is that embodied in the HUD regulations pursuant to which these bonds were obtained and in the language of the bonds themselves, which were drafted by HUD. While it is clear that a major purpose of the bonds was to protect the Authority from liability resulting from the default of its general contractor, it was also their purpose to protect third parties supplying labor and materials for these projects and to ensure that their just claims were paid. In light of this policy, as well as the fact that the Tribe and its economic enterprises remain immune from any suit by Aetna for indemnification, we hold that Aetna may not raise the sovereign immunity of the Tribe or the Enterprise as a defense to this action, and that the appellant's complaint may not be dismissed on this basis. In so holding, we note that Aetna's position in entering into these surety agreements was no different than that of Gulf in *Centraal Stikstof Verkoopkantoor, N.V. v. Alabama State Docks Department, supra.* Aetna must surely have been aware of the immunity of its principal from suit, and could have taken steps to protect itself, for example, by requiring the Enterprise and the Authority to identify all subcontractors and suppliers and to obtain releases from the latter prior to final payment. Having failed to do so, it cannot now escape its obligations under the bond under the guise of sovereign immunity.

The order of the trial court dismissing the complaint as to the Enterprise is affirmed. The order of the trial court dismissing the complaint as to Aetna is reversed, and the cause is remanded for further proceedings.

HATHAWAY and HOWARD, JJ., concur.