**WHITE MOUNTAIN APACHE TRIBE,**
Plaintiff–Appellee,

v.

**SMITH PLUMBING COMPANY, INC.,**
doing business as White Mountain Supply Company, an Arizona corporation, Defendant–Appellant.

No. 87–2340.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided Sept. 2, 1988.

**1302**

Charles W. Wirken, Killian, Legg, Nicholas, Fischer, Wirken, Cook & Pew, Mesa, Ariz., for defendant-appellant.

Robert C. Brauchli, White Mountain Apache Tribe Legal Department, Pinetop, Ariz., for plaintiff-appellee.

Before GOODWIN, SCHROEDER and POOLE, Circuit Judges.

GOODWIN, Chief Judge:

Smith Plumbing Company, Inc. appeals a preliminary injunction against proceeding with a state court trial against an insurer who wrote a performance bond for White Mountain Apache Tribe's tribal development enterprise.

White Mountain Apache Tribe is a federally recognized Indian tribe organized pursuant to § 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476 *et seq.* (1982), and occupies a reservation in east central Arizona known as the Fort Apache Indian Reservation.

The White Mountain Apache Housing Authority was created by the Tribe in 1963 pursuant to a requirement of the Indian Housing Division of the United States Department of Housing and Urban Development (HUD), in order to receive financial assistance from HUD to build low-income housing on the reservation. The Housing Authority has the power to contract with and to borrow money from HUD for the purpose of constructing housing for tribal members on the reservation.

The White Mountain Apache Development Enterprise (Enterprise), a subsidiary of the tribal government, was created in 1968 for the purpose of undertaking construction projects on the reservation as a general contractor.

Aetna Casualty and Surety Company (Aetna) is an insurance company doing business in the State of Arizona and on the reservation. Its business includes issuing performance-payment bonds for construction projects.

G, S & D Plumbing (GS & D), now defunct, was a private, non-Indian plumbing subcontractor.

Smith Plumbing Company, Inc. is an unpaid wholesale supplier of plumbing materials and supplies who sold merchandise to GS & D for use in the Enterprise construction project.

In 1978, the Enterprise undertook to build four low-income housing projects financed by HUD. HUD regulations required a general contractor's performance-payment bond for each construction contract. Aetna provided bonds in standard form, with provisions guaranteeing payment of wages and materialmen on the projects. Aetna required a Council resolution agreeing to indemnify Aetna for any payments Aetna made pursuant to the performance-payment bond in the event that the Tribe, as general contractor, failed to pay all project labor and material costs. Aetna accepted the resolution as a substitute for its usual general contract of indemnity. Aetna relied upon the resolution

to insure that it would be held harmless and indemnified for any and all losses in connection with the performance bonds issued for the HUD projects.

The parties agree that all relevant subcontracts were entered into, and all relevant deliveries were made on the Fort Apache Indian Reservation. Smith Plumbing supplied the building materials to GS & D for the housing projects on the reservation on open account for a number of months.

## PRIOR PROCEEDINGS

### 1. *Abortive resort to federal court*

A dispute involving non-payment for plumbing supplies arose among Enterprise as general contractor, GS & D as sub-contractor, and Smith Plumbing as supplier. Smith Plumbing filed an action in the United States District Court for the District of Arizona against GS & D Plumbing, the Tribe as general contractor, and Aetna. This action was dismissed by the district court for lack of subject matter jurisdiction.

### 2. *State court litigation*

Smith Plumbing next filed an action in the Arizona Superior Court. Smith Plumbing sued the Housing Authority on the basis of unjust enrichment, and joined the Housing Authority and Aetna to enforce the performance-payment bond. Neither the Tribe nor GS & D Plumbing was named in this action. The Tribe filed a "Motion to Intervene" for the special and limited purpose of objecting to the jurisdiction of the state court. The Tribe argued that state court adjudication of the claim against either Aetna or the Housing Authority could bind the Tribe both legally and practically, and if so, the action violated federal law and tribal sovereignty.

After the Tribe intervened, Smith Plumbing voluntarily dismissed the action as to the Housing Authority. Subsequently, pursuant to a motion to dismiss, the superior court dismissed the Tribe as general contractor, *sub nom* Development Enterprise, and its surety, Aetna. Smith Plumbing did not appeal the dismissal of the

Indian entities as parties defendant but did appeal the dismissal of Aetna.

Concluding that Smith Plumbing had waived any claim of error in the trial court's dismissal of the Indian entities, the Arizona Court of Appeals affirmed that portion of the trial court's order but reversed the dismissal of Aetna. The court of appeals held that Smith Plumbing, as the beneficiary of Aetna's bond, was entitled to sue thereon in the state court and that Aetna could not assert the Tribe's sovereign immunity to deny Smith Plumbing access to state court. It followed that Smith Plumbing could sue Aetna without joining the Tribe, leaving Aetna to proceed as it saw fit if further disputes arose out of contracts between Aetna and the Tribe.

The Arizona Supreme Court granted review and a divided court affirmed. *Smith Plumbing Co., Inc. v. Aetna Casualty and Surety Co.*, 149 Ariz. 545, 720 P.2d 520 (1984), *opinion approved as supplemented by*, 149 Ariz. 524, 720 P.2d 499, *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). The majority agreed with the court of appeals that a state court had jurisdiction to decide the merits of Smith Plumbing's case against Aetna. The majority concluded that the superior court could rule on Aetna's liability without deciding any question in a manner that would infringe upon the legitimate exercise of tribal court jurisdiction, or violate the doctrine of tribal sovereign immunity, or be inconsistent with tribal self-government. *Id.*

The dissent disagreed with the majority's view of the material facts and took the position that the operation of Arizona surety law would create such an identity of interests between principal and surety that there would be an unavoidable conflict between state court jurisdiction and federal Indian policy. *Id.* 149 Ariz. at 531–35, 720 P.2d at 508–12 (Feldman, J., dissenting).

### 3. *District Court*

On May 6, 1987, the Tribe filed this injunction suit in district court against Smith Plumbing and the Arizona superior court judge assigned to Smith Plumbing's action

against Aetna. The Tribe alleged that by reason of the assertion of state court jurisdiction over Aetna, the Tribe had suffered and would continue to suffer extreme hardship and irreparable harm and injury.

The Tribe argued that because of its resolution (contract) with Aetna, an action against the Tribe's surety (Aetna) in state court would necessarily hale the Tribe into state court to adjudicate matters exclusively within the jurisdiction of the tribal court (the liability of its surety). The Tribe argued that Smith Plumbing's case against Aetna necessarily would adjudicate the nature and extent of the Tribe's own liability to Aetna arising out of reservation-based construction projects. The Tribe argued that such a result impermissibly infringed upon the Tribe's federally protected right of self-government and violated federal Indian policy of immunity from suit in state court.

The district court entered a temporary restraining order followed by a preliminary injunction. The district court adopted as its own the findings of fact and conclusions of law from the dissenting opinion in *Smith Plumbing Co.*

The district court incorporated by reference the dissenting opinion, and, in addition, found that: (1) there was a substantial likelihood that the Tribe would prevail on the merits of its contention that the state court lacked jurisdiction over Aetna, and that the exercise of jurisdiction by the court over the Tribe's surety would violate federal policies proscribing state infringement of tribal self-government, and would violate the doctrine of tribal sovereign immunity from suit in state court; (2) that the Tribe would suffer irreparable injury if the state trial was not enjoined, and that the state trial would alter the status quo between the Tribe and Smith Plumbing before a hearing could be held on the merits of the Tribe's federal court complaint; (3) that the threat and injury to the Tribe outweighed any threat and injury to Smith Plumbing or the state court, that an adequate bond had been posted by the Tribe which was agreeable to Smith Plumbing, and that Smith Plumbing and the state

court would suffer little or no injury as a result of the preliminary injunction; and (4) that granting the preliminary injunction would serve the public interest of protecting the guardian-ward relationship between the United States and Indian tribes as manifested in a federal policy of protecting Indians and Indian property from state infringement, and would preserve the status quo of the district court action which asserted superior federal interests over which the district court had jurisdiction.

The only real issue at the point of the appeal from the district court injunction was whether a surety doing business between tribal entities and non-Indian third parties can be sued in the state court, or may it be sued only in the Indian tribal court. This question turns upon the nature of the relationship of principal and surety, and the effect of that relationship upon the exclusive-jurisdiction law that envelopes tribal entities when they undertake to carry on business off the reservation which has impact on the reservation.

## APPLICABILITY OF ANTI–INJUNCTION ACT

■ Before a federal court enjoins state court proceedings, that court should consider whether the Anti–Injunction Act, 28 U.S. C. § 2283 (1982) applies. Section 2283 provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Tribe's request for injunctive relief falls within the second exception: "where necessary in aid of its jurisdiction." 28 U.S.C. § 1360(b) (1982 & Supp. II 1985). The district court has jurisdiction to preserve the integrity of tribal claims. Accordingly, the Anti–Injunction Act does not bar the Tribe's request for injunctive relief.

## PROPRIETY OF GRANT OF INJUNCTIVE RELIEF

■ To affirm a preliminary injunction, it must be shown that injunctive relief is warranted by a finding either of a combination of probable success on the merits and

the possibility of irreparable harm or of serious questions in which the balance of hardship weighs sharply in favor of the party seeking relief. *See Sierra Club v. Marsh,* 816 F.2d 1376, 1382 (9th Cir.1987); *Zepeda v. United States Immigration & Naturalization Service,* 753 F.2d 719, 727 (9th Cir.1983). These criteria are not alternative tests but represent a continuum of equitable discretion whereby "the greater the relative hardship to the moving party, the less [the] probability of success must be shown," *National Center for Immigration Rights, Inc. v. Immigration and Naturalization Serv.,* 743 F.2d 1365, 1369 (9th Cir.1984), and vice versa. Moreover, before striking down the ruling as an abuse of discretion, the reviewing court would have to say that the district court incorrectly applied substantive law or preliminary injunction standards. *See Zepeda,* 753 F.2d at 724.

The district court premised its injunction primarily on two theories. First, it relied on the theory that there was a substantial likelihood that the Tribe would prevail on the merits. The court assumed that the state court lacked jurisdiction over Aetna, because Aetna stood in the Tribe's shoes as an intermediate payor of money, and could later look to the Tribe for indemnity. On this theory, the district court followed the Arizona Supreme Court's dissent. The reasoning was that an action against Aetna would violate federal policies proscribing state infringement of tribal self-government. As will be seen, this reasoning does not necessarily follow. The district court's second theory was a general conclusion that the federal policy protecting Indians and Indian property from state infringement would best be served by granting the injunction. The district court's view of the law swept aside some intermediate inquiries.

Whether the district court correctly granted the preliminary injunction on tribal self-government grounds necessarily involves an analysis of the relationship between Aetna and the Tribe. The analysis of state suretyship law must be made in light of the state court's lack of jurisdiction over the Tribe, but also in light of the state court's presumptive jurisdiction over Aetna. The question comes down to the single issue whether state jurisdiction over Aetna is defeasible by reason of Aetna's contract with the Tribe, a party over which the state has no jurisdiction.

▉ It is well settled that civil jurisdiction over activities of non-Indians concerning transactions taking place on Indian lands "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987); *Wellman v. Chevron U.S.A., Inc.,* 815 F.2d 577, 578 (9th Cir.1987); *see Snowbird Constr. Co. Inc. v. United States,* 666 F.Supp. 1437, 1443 (D.Idaho 1987). To override this presumption, Smith Plumbing must demonstrate that the exercise of state court jurisdiction over Aetna in requiring it to perform under its bond does not substantially affect activities in Indian country. The question involves the purpose of the protective statutory and case law that non-Indians may not sue an Indian tribe in a state court to obtain rights against Indian property. *See Fisher v. District Court,* 424 U.S. 382, 388, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (per curiam) (1976); F. Cohen, *Handbook of Federal Indian Law* (1982 ed.) [hereinafter cited as Cohen], at 359.

▉ An important aspect of tribal sovereignty is authority over the activities of non-Indians in Indian country. *LaPlante,* 107 S.Ct. at 978; *see Montana v. United States,* 450 U.S. 544, 565–66, 101 S.Ct. 1245, 1258–59, 67 L.Ed.2d 493 (1981); *Fisher,* 424 U.S. at 387–89, 96 S.Ct. at 946–48; F. Cohen at 359 ("Tribal self-government requires that tribal authority over Indian property on a reservation be exclusive of state authority"). Tribal courts, moreover, are the "appropriate forums for the exclusive adjudication of disputes affecting important personal and *property interest* of both Indians and *non-Indians.*" *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 65, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978) (emphasis added); *see A & A Concrete,*

*Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411, 1415 (9th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); *Superior Oil Co. v. Merritt,* 619 F.Supp. 526, 533 (D.Utah 1985).

■ Conceding the general principles favoring the protection of tribal interests from possibly hostile adventures by plaintiffs suing in state courts, Smith Plumbing argues that the district court should not have decided this case by anticipating downstream disputes that may or may not arise between Aetna and the Tribe. We agree.

For the purposes of this case it is irrelevant that at some future date Aetna may seek in some manner to invoke Ariz.Rev. Stat.Ann. § 12–1642 (1982). The statute directs that where an issue involving a surety "is determined in favor of the surety, the court shall order the sheriff to levy the execution first upon the property of the principal which is subject to the execution...." However, it is entirely speculative and anticipatory to rely upon possible applications of this statute in hypothetical state court litigation to enjoin Smith Plumbing's action against Aetna. The statute obviously can have no application in the tribal court.

Federal housing policy goals, Smith Plumbing argues, require that beneficiaries of payment bonds be able to sue the surety without regard to secondary, private agreements that the surety may have entered into with a tribe or with some entity that enjoys some other form of immunity from suit in state court. Smith Plumbing argues that concerns about tribal self-government should be saved for any future dispute that may or may not arise if Aetna brings a claim for indemnity against the tribe. No such dispute presently exists. In the event of such a dispute, Smith Plumbing argues, the surety would have recourse against the Tribe only in the tribal courts. *See National Farmers Union Ins. Co. v. Crow Tribe,* 471 U.S. 845, 856, 105 S.Ct. 2447, 2453, 85 L.Ed.2d 818 (1985) (reaffirming the initial jurisdiction of tribal courts). That was a part of Aetna's undertaking when it chose to do business with a tribe.

But these concerns have nothing to do with Smith Plumbing.

The Tribe argues that it is immaterial that the parties to the state court action are all non-Indians. *Williams v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959); *Joe v. Marcum,* 621 F.2d 358, 361–62 (10th Cir.1980). The argument misses the point that the only property subject to a state court judgment in favor of Smith Plumbing would be that of Aetna. In such cases, "states have always retained civil jurisdiction over disputes between non-Indians involving interests in property within an Indian reservation." *Kuykendall v. Tim's Buick, Pontiac, GMC & Toyota, Inc.,* 149 Ariz. 465, 719 P.2d 1081, 1083 (1985). In this case, no Indian assets or other property situated in Indian country could be directly affected by a judgment for Smith Plumbing against Aetna. Neither would a judgment for Smith Plumbing necessarily have preclusive consequences on the rights of Aetna to indemnity. If the Tribe refuses to comply with its resolution of indemnity, Aetna may indeed be required to seek its remedy in tribal court. But this is a matter of no concern to Smith Plumbing, a stranger to the agreements between Aetna and the Tribe. Moreover, with respect to tribal self-government, the state court case is in no manner a civil case "where a non-Indian plaintiff seeks to sue an Indian or to attach or affect Indian property in Indian country." F. Cohen at 349. The pertinent facts here simply do not call for the state court proceedings to be enjoined.

REVERSED.